## No. 8082.

### State of Louisiana vs. William Everage et al.

In a criminal prosecution for larceny, it is sufficient to lay the title of the property stolen in the ostensible or apparent owner of it.

And, for the purpose of such prosecution, cattle at large in the woods or prairies, must be considered as in the possession of the owner.

The Proviso of Act No. 36 of 1880, allowing the State three peremptory challenges for each defendant, is unconstitutional, under Article 29 of the Constitution, because the object of the Proviso is not expressed in the title of the law.

APPEAL from the Eleventh Judicial District Court, parish of Natchitoches. *Pierson,* J.

*D. C. Scarborough,* District Attorney, and *J. C. Egan,* Attorney General, for the State, Appellee.

*Wm. H. Jack* for Defendant and Appellant.

The opinion of the Court was delivered by

Poché, J. Under an indictment for larceny of a hog, alleged to be the property, jointly, of C. A. Presley and N. Fuller, Nelson King and William Everage were tried and convicted by a jury of five, at a term "not a regular jury term," provided for in Act No. 35 of the Legislature of the year 1880, enacted under the authority of article 7 of the Constitution.

Nelson King, having been recommended to the clemency of the court, was sentenced to imprisonment for thirty days in the parish jail, and does not appeal; but William Everage, who was sentenced to imprisonment in the State Penitentiary for one year, seeks by appeal the reversal of the verdict and sentence on several grounds, enumerated in four bills of exception, in a motion for a new trial, and a motion in arrest of judgment.

After analyzing the several bills of exception reserved by the accused, and the facts interwoven in those bills, we gather in substance the

following facts, which must be considered as blended with the questions of law to be determined.

That the hog, which is charged to have been stolen by the accused, was part of a herd of hogs owned by A. J. Page, "running at large in the woods," "marked in the ear with mark of said Page;" and that at the death of Page, who left a surviving wife and partner in community, and several minor children, the herd of hogs, "as they ran in the woods," were sold for cash to Presley and Fuller by Widow A. J. Page, acting in said transaction through the agency of her brother-in-law, Daniel Page.

The accused complains of the refusal of the judge to charge the jury on the question of the alleged ownership of the property stolen, in substance, as follows:

First. That a verbal authority from the owner is not sufficient for an agent to sell movable property.

Second. That the surviving widow in community owning but one half of the community property cannot make a valid sale of the same, though it be movable property, by private act and extrajudicially.

Third. That larceny cannot be proved unless the property charged to have been stolen was in the actual or natural possession of the alleged owner.

After a careful examination of the able brief submitted by counsel for the accused, and of all the authorities quoted by him, we find no error in the course of the judge in refusing to charge as requested. We know of no law which requires a written mandate to authorize the sale by an agent of movable property. The accused asked the judge to charge that the authority of the agent to make such a sale must be shown to be express and special; which charge was given by the judge, but he properly added the words " verbal authority in such case is good." The objection of the accused to the insertion of these words is therefore unfounded.

And his position is equally untenable in his request for the charge denying the widow's right to sell and dispose of a lot of hogs belonging to the community. We are clear that hogs, like money, grain, liquors or provisions are, in a case like this, subject to the imperfect usufruct of the surviving widow, who has full power under the law to consume, sell, or dispose of them as she thinks proper." And we, therefore, conclude that the alleged owners had thus acquired legal ownership of the hogs, fully sufficient to justify a charge of larceny against any third person who took and appropriated them without their consent. It has been held that the possession of a thief was sufficient to prove larceny against another thief who stole from him; a fortiori will this rule apply to a purchaser in good faith, even if in a test with another claimant his title might be found defective.

The reasoning urged by counsel for the accused might have some strength or applicability if the title of Presley and Fuller was contested in a civil suit on behalf of the Page minor heirs, but it has no application in a case of larceny, where the felonious taking, more than the perfect legal title of the alleged owner, forms the essence of the issue presented to the jury. The judge gave the charge covered in the third ground of complaint, but inserted the word "constructive" so as to read "actual, or natural, or constructive possession;" and, we think, there was no error in the qualification added by him.

The hogs were running in the woods, and were sold "as they ran;" they were marked by the ear mark of Page, and were thus identified by the purchasers, and the unlawful severance from such possession is larceny in common law. To require corporeal possession by a purchaser of that kind of property, as a test of the unlawful taking of such property, would be equivalent to licensing the pillaging and utter destruction, as to the owners, of the immense herds of cattle and other stock, bred, reared, and owned in the prairies and in the forests of this State, whence our markets are in part supplied.

The motion for a new trial was predicated on the grounds herein-above enumerated and disposed of.

The motion in arrest of judgment was based on the alleged uncertainty of the indictment, for insufficient description of the animal charged to have been stolen; which is described as "one hog then and there being found of the value of ten dollars, the property of N. Fuller and C. A. Presley." But in his brief counsel for the accused fails to elucidate or develop this point of his defense, which we understand is virtually abandoned by him, especially as he concludes with the prayer that "the case be remanded to be proceeded with according to law."

The accused reserved another bill of exception, and that is levelled at the ruling of the judge in allowing the State to exercise more than three peremptory challenges, which is the number allowed to the prosecution by section 4 of Act No. 35 of 1880, under the provisions of which law this trial was held.

In support of his ruling the judge refers to Act No. 36 of the same year and of the same day, at the end of which is found a proviso, reading as follows:

" Provided this act shall not apply to trials to be tried by a special jury at other terms than regular jury terms of the court, in which cases of trials for crimes and offenses not necessarily punishable at hard labor or death, the accused shall be allowed six peremptory challenges and the State three for each defendant on trial."

Under Act No. 35, the accused is entitled to five peremptory chal-

lenges and the State to three, without reference to the number of defendants on trial.

It is very evident that the two provisions are inconsistent, and that the trial of cases "at other terms than regular jury terms" must be regulated by the one exclusively of the other. The District Judge adopted the proviso in Act No. 36 as containing the latest expression of legislative will. In this he may be correct, but the latest expression of legislative will, in order to have the force and effect of law, must be clothed in accordance with constitutional regulations and inhibitions.

Now Act No. 36 is entitled "An act to amend and re-enact section 997 of the Revised Statutes of 1870, in regard to challenges of jurors in trials of criminal cases." And that section refers to regular jury terms or juries of twelve, and refers to cases where the punishment may be by imprisonment at hard labor for twelve months or more; and it is amended so as to allow to the State six peremptory challenges for each accused on trial; and the amendatory act, in clear language, disclaims any application "*to the trial of cases at other terms than regular jury terms,*" for which class of cases ample provision is made in Act No. 35; and yet in the face of such formal declaration it contains a provision on the subject of peremptory challenges in that very class of cases, and that provision materially differs from the rule laid down in Act No. 35, which from its title and tenor is the very act intended by the Legislature for the regulation of criminal trials at other terms than regular jury terms.

The two provisions are clearly inconsistent, and cannot co-exist— one must be the governing rule to the exclusion of the other. The provisions contained in section 4 of Act No. 35 are in keeping with the tenor of the act, and are expressed or covered in the title of the act.

By inserting the provision in Act No. 36, under which, in the identical class of cases, the State is allowed three peremptory challenges for each accused on trial, the Legislature manifestly intended to amend the provision on the same subject-matter in Act 35, under which the State is allowed only three peremptory challenges and the accused five instead of six.

But that intention or object is not expressed in the title of Act No. 36, and is therefore stricken with nullity by Art. 29 of the Constitution.

The title of the act proposes to amend and re-enact a statute on an entirely different subject-matter, and cannot be stretched under any possible construction to cover an amendment of a different statute, enacted in furtherance of a new constitutional provision, and brought to light two years after the enactment of the amended statute. Our conclusion is, therefore, that the provision in Act No. 36 is absolutely null and void, as though not written at all; and that the court should

have been guided by Act No. 35 in the whole trial on the subject of peremptory challenges. The court therefore erred in allowing the State to use more than three peremptory challenges, and for that reason the sentence must be avoided.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury be set aside and the judgment of the lower court annulled, avoided and reversed, and that this case be remanded to be proceeded with according to law, and to the views herein expressed.

Levy, J., absent.