MARIA K. DILLENBERGER, Appellant, *v.* WILLIAM C. WRISBERG ET AL., Respondents.

### June 14, 1881.

1. During the joint lives of husband and wife, the former is entitled to the rents and profits of the freehold estates of which the wife was seized at the time of her marriage.

2. The Married Woman's Act of 1875, does not affect the husband's right to the proceeds of the wife's realty.

3. To charge him as her trustee in the collection of the rents of her realty, a clear intention on his part to collect and hold them as her trustee must be shown.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed*.

FINKELNBURG & RASSIEUR, for the appellant, cited : *Tillman* v. *Tillman*, 50 Mo. 90 ; *Tennison* v. *Tennison*, 46 Mo. 77.

H. A. McGINDLEY, for the respondents, cited : *Clark* v. *Rynex*, 53 Mo. 380 ; *Silver* v. *Sumner*, 61 Mo. 253 ; *Terry* v. *Wilson*, 63 Mo. 493 ; *Boyce* v. *Mayer*, 17 Mo. 47 ; *Woodford* v. *Stephens*, 51 Mo. 443.

Bakewell, J., delivered the opinion of the court.

The plaintiff, who is the widow of William Dillenberger, deceased, presented for allowance in the Probate Court, a claim against his estate for a balance of $3,330, alleged to have been collected by deceased in his lifetime, of rents of her property. On trial anew in the Circuit Court, there was a finding and judgment for defendant.

By stipulation of the parties, it was admitted that William Dillenberger died October 4, 1877; that plaintiff holds the real estate from which the rents in question issued, under the will of one Rhem; that the account filed is, in the aggregate, a copy of the accounts of said rents in the book referred to by the witnesses. And it was agreed that the case be submitted on this admission, and the agreed testimony of plaintiff and William Wrisberg filed with the submission, and a copy of Rhem's will.

It was agreed that plaintiff would testify that she was married to Dillenberger in February, 1864, and lived with him till his death; that she acquired the real estate in question before her marriage with Dillenberger, from her former husband, Rhem, by will, to hold for life, remainder to her child by Rhem. The agreed testimony of this witness proceeds, as follows: "Dillenberger collected the rents on this property from the time I married him. I know the amounts he collected, for he, nearly all the time, put the amounts collected in the book. I have got the book at home. I had two step-children living with me. After I married Dillenberger we went to the country. I never got any of the money he collected; he used it all in the business. I don't know that any of the money was used in the family. He collected the money. I never asked him for it. We worked together. I worked more than my husband. The family was always kept together. I kept a big house full of boarders, doing the entire work with my children. We had store-room and bar-room. I attended to all this, and my husband attended to the coal

business. I told Dillenberger to collect the rents, as it was no use for both of us to collect them. I was satisfied that he should collect the rents."

The agreed testimony of Wrisberg is to the effect that, after Dillenberger's death, he found a book containing an account of rents collected of the Rhem estate; the book is now in Mrs. Dillenberger's possession. Mrs. Dillenberger had no children by Dillenberger. Two children of Dillenberger, and two of Mrs. Dillenberger by former husbands, lived with Dillenberger and his wife up to the respective dates of their marriages. The children worked hard for the Dillenbergers in the saloon and in the family, from their sixth year; had only the most common clothing, and were at school only a short time each season. Whilst Dillenberger carried on the store, saloon, and coal business, he had an average of from twenty to thirty boarders. With the exception of one servant, Mrs. Dillenberger and her daughters did all the work. Dillenberger made all his money in the coal, saloon, and grocery business after his marriage with plaintiff.

The book spoken of by Mrs. Dillenberger was not offered in evidence. The account filed sets out, in eighteen separate items, the amounts collected from eighteen different tenants from February, 1864, to July, 1877, with the amount of the monthly rent in each case. The sum received is $4,581, from which is deducted the amount paid for taxes. The amount of taxes paid each year is set out in a separate item. The total of taxes paid is $1,250.36, leaving a balance of $3,330.64, for which judgment was asked.

The only other evidence was Rhem's will, which leaves to his wife Katharina all his property for life, remainder to his daughter.

During the joint lives of husband and wife, the husband is entitled to the profits of all freeholds of which the wife is seised at the time of the marriage. By statute in Mis-

souri (Rev. Stats., sect. 3295), the real estate of the wife and its rents, issues, and profits are exempted from seizure by the husband's creditors, but the only restraint imposed by the statute upon the husband is that he is deprived of the power of conveying away his interest in her lands and their rents and profits without the co-operation of the wife. He can collect the rents of her land, and reduce them to his possession, and he does not need her permission to do so. *Clark* v. *Bank*, 47 Mo. 17. Nor, when he collects the proceeds of her lands, can he be held as a trustee for her, unless the evidence of the intention to create such a trust is clear. *Tillman* v. *Tillman*, 50 Mo. 40 ; *Tennison* v. *Tennison*, 48 Mo. 83. In the present case, there is no evidence that we can see tending, even remotely, to show that the husband, in collecting these rents, collected them for his wife, or had any intention of holding them for her, or that he ever regarded them as her separate property. There is no rule of common law, and no statutory provision, which seems to furnish any warrant for the position assumed by appellant, that the facts in evidence tend to show that these rents, when collected by the husband, belonged to the wife. The Married Woman's Act of March 25, 1875 (Rev. Stats., sect. 3296), does not affect the husband's rights to the proceeds of the realty of the wife.

The trial court excluded the testimony of the wife ; and it is insisted that, under the agreement submitting the case, this testimony should have been admitted. This is wholly immaterial. We have set out this testimony, and its admission could not have changed the result.

The judgment is for the right party, and it must be affirmed. It is so ordered. All the judges concur.