UNITED STATES *v.* JONES.

(*Circuit Court, S. D. Georgia, W. D.*   June 30, 1887.)

1. ROBBING THE MAIL — INDICTMENT — ALLEGATION OF OWNERSHIP — PLEADING AND PROOF.
    Where it is charged in the indictment that the letter and its contents are the property of the person to whom it is addressed, if it appears in proof that the contents were sent for the benefit of that person, and were stolen while in the mails, the proof will support the allegation of ownership.
2. SAME — SPECIAL PROPERTY.
    If it appears in proof that the person to whom the letter is addressed has a special property in its contents, or certain trusts or duties to perform with reference to it, this will support the allegation of ownership in him.
3. SAME — OWNERSHIP OF CHECK.
    Where it appears that a check was sent through the mails by a debtor to a creditor, with instructions to credit the amount on his debt, the ownership of the check may properly be laid in the latter
4. SAME — DESCRIPTION OF CHECK — ALTERATIONS.
    If the check is correctly described as it was, at the time it was stolen, subsequent indorsements or other alterations thereon will not make a variance.
5. PRESUMPTION — ACTS OF PUBLIC OFFICERS.
    All public officers are presumed to do their duty faithfully until the contrary appears by proof.   This presumption applied to the facts, and qualified.
6. LARCENY — RECENT POSSESSION OF STOLEN PROPERTY.
    The possession of stolen property recently after the theft, and not explained, *prima facie* is guilty possession.[1]
7. CRIMINAL PRACTICE — EVIDENCE OF GOOD CHARACTER.
    Proof of good character is always proper evidence for the defense, and should be considered by the jury; but, if all the evidence is satisfactory to show the guilt of the party charged, he should be convicted notwithstanding his good character.
8. SAME — "REASONABLE DOUBT."
    "Reasonable doubt" defined.[2]

(*Syllabus by the Court.*)

Indictment for Robbing the Mails.

*Dupont Guerry*, U. S. Atty., for prosecution.

*Hill & Harris* and *Dessau & Bartlett*, for defendant.

SPEER, J., (*charging jury.*)   The patient carefulness and attention which you have manifested throughout this lengthy trial has greatly simplified, shortened in volume, and lessened in detail the instructions which I must give you.   For this faithfulness the court is naturally very much obliged to you.

The prisoner is charged, by indictment in two counts, with the violation of a statute of the United States directed against larceny or theft

---

[1]Respecting the presumption arising from the possession of recently stolen property, see McMahon v. People, (Ill.) 11 N. E. Rep. 883; State v. Griffin, (Iowa,) 32 N. W. Rep. 447; Johnson v. Miller, (Iowa,) 29 N. W. Rep. 743, and note; State v. Phelps, (Mo.) 4 S. W. Rep. 119, and note.

[2]Respecting "reasonable doubt" in criminal cases, see Knarr's Appeal, (Pa.) 9 Atl. Rep. 878; People v. Lee Sare Bo, (Cal.) 14 Pac. Rep. 310; McCullough v. State, (Tex.) 5 S. W. Rep. 175; White v. State, (Tex.) 3 S. W. Rep. 710, and note; U. S. v. Jackson, 29 Fed. Rep. 503, and note; People v. Kernaghan, (Cal.) 14 Pac. Rep. 566.

of the mails, or from the mails.   This crime is defined by section 5467 of the Revised Statutes, which has already been read and explained to you.   The accusation against the prisoner presents a charge of aggravated larceny.   While the main elements of the crime of larceny or robbery from the mails, namely, the fraudulent or forcible taking and carrying away of the personal goods of another, with intent to steal the same, are essential to the existence of the crime defined by this statute, there is a general distinction which the jury should understand and bear in mind.   The postal system is established by law to secure the safe and speedy means of intercommunication between the people; the safe and certain transmission of money, and written instruments representing money, and other articles of convenient size.   The custody of the post-office officials is the custody of the law, not only for the benefit of the sender of mail matter, but for the benefit of the person to whom it is sent; and one who steals from the mail, while it is in process of transmission, in fact steals property in which ordinarily more than one person is interested.   Now, in every indictment for larceny, it is necessary to allege that the property taken has an owner, and that it has been taken with criminal intent.   Where, however, a letter is stolen from the mails in process of transmission, since generally both the sender and receiver have an interest in the letter, and either would generally be entitled to a right of action for the theft or wrongful appropriation by a third party, if it is charged in the indictment that it is the property of the person to whom it is addressed, in the absence of proof that he had no interest in the letter or its contents, the averment in the indictment would be sufficient.

Further, if it be charged in the indictment that the stolen letter and its contents are the property of the person to whom it is addressed, and if it appears from the proof that they were stolen while they were in process of transmission by the mails, such proof will support the allegation that the letter and contents were the property of such person, if it also appears that the letter and contents were sent for the benefit of the person to whom the letter was addressed.   Again, if it appears in proof that a person has a special property in stolen goods, it may be alleged in the indictment that they are his; and, if the proof shows that he had certain trusts or duties to perform with reference to the article, it will support the allegation of ownership in him.   Roscoe, Crim. Ev. 637; *Ellis* v. *State*, 76 Ala. 90, 7 Crim. Law. Mag. 397; *State* v. *Heaton*, 23 W. Va. 773, 7 Crim. Law Mag. 821; *Hill* v. *State*, 11 Tex. App. 132, 4 Crim. Law Mag. 133; *State* v. *Everage*, 33 La. Ann. 120, 3 Crim. Law. Mag. 597; 3 Chit. Crim. Law, 947b.

Now, in the indictment against the prisoner it is alleged that he stole from the mails a check which was the property of S. T. Coleman & Co. If you believe from the evidence that the defendant did, as charged, steal from the mails the check, and that the witness Williams had mailed a letter containing the check to S. T. Coleman & Co., with authority to them to collect the amount due thereon, and place it to his (Williams') credit on their account against him, or with authority to credit his ac-

count with the amount of the check, the averment in the indictment is proper, and the proof will support the indictment, and you ought to find the defendant guilty.

It is insisted by the prisoner's counsel that because the debtor must be authorized by the creditor to make his remittance by mail before the law will charge such remittances against the creditor, in case they are lost or stolen in the mails, the creditor has no interest in property so sent, and therefore, they insist, it could not be properly said to be the creditor's. This does not follow. The creditor is not bound to charge himself with a remittance sent him by the mail, unless he authorizes that method of communication; but he has nevertheless a certain interest, amounting to a right of property, and a certain duty connected with it, which in the case before the court, assuming the facts to be true, made the check sent by Williams, to Coleman & Co. the special property of the latter. In the first place they, and they alone, had the right to receive it; and a letter and its contents are presumed to belong to that person who is entitled to receive it; and this presumption is so strong that, after such letter has left the mailing office, it will not, except on the order of the postmaster general, be delivered to any other person. Being entitled to receive it, Coleman & Co. had such a right of property in it that the sender (Williams) could not retake it without their consent. If they declined to give Williams credit for it, they, as trustees for him, were responsible to him for its safe keeping and return. In the illustration well put by the district attorney, Williams may have attempted to close his account with a promissory note. This would not be payment unless the note itself was paid, but nevertheless the note so sent would be the property of Coleman & Co., and the evidence of their debt against Williams, and, if stolen either in the mails or otherwise, it would be proper to allege in the indictment that the note was their property.

If the testimony of Mr. Burden be accurate, according to the usage of the firm, it was their duty to pass the check provisionally to Williams' credit, and then attempt to collect it. All these facts, if true, and the question of their truth or untruth is for you to determine, I charge you, as a matter of law, gave to Coleman & Co. a special property in the check, if not for their own benefit, then for the benefit of Williams, which is sufficient to support the allegation of ownership in this indictment. It must be borne in mind that this is a charge of stealing from the mails where the letter and its contents are not in the possession of either the sender or the person to whom they are sent, but are in the possession of the post-office department for the benefit of both; and I charge you that the indictment is good, and, if the witnesses who testify to the facts I have recited are credited by this jury, you will be justified in finding the ownership of the check in Coleman & Co., and you will advance to the next matter for your consideration, and that is, has it been satisfactorily shown that the prisoner stole the check as alleged in the indictment?

In this, as in all criminal cases, the burden of proof is on the government to make it satisfactorily appear to the jury that the charge of crime

against the accused is true. In determining this question, you will give your attention to all the evidence that has been offered on both sides.

In the first place, the check was in proof. I charge you, gentlemen, that check is accurately described in the bill of indictment; and if you find, from the proof, that other indorsements, not mentioned in the indictment, were written on this check after it was stolen, (if you find it was stolen,) that will not make a variance between the indictment and the proof which would authorize you to acquit the defendant, because the stolen property must be described in the condition it was at the time it was stolen, and subsequent alterations will not affect the question. Now, what was the testimony of the witnesses about this check? Walker identifies it as the check which he received. He testifies that he indorsed it, and traded it to Williams. Williams testifies that he was the deputy-postmaster at Temperance; that he inclosed this check in a letter directed to S. T. Coleman & Co., with authority to them to credit it or its amount upon a debt due by him to them; that he sealed the letter, stamped it, put it in his private box; that he was deputy-postmaster; that when the time came to send the mail off he put the letter containing the check in the mail-pouch, which he tells you was in good order; that he locked it, and delivered it to the mail carrier. He tells you furthermore that, anterior to the time it was "pouched," or put in the mail-bag, it was in a place under his observation, and that no one had the opportunity of changing it, and that when it was placed in the pouch that the envelope which contained the letter and the check was still sealed, and that the seal had not been broken. The next witness was Studsill. He was postmaster at Poplar Hill. He testifies that he remembers the day, the nineteenth of July, 1884, when Williams testified that he mailed this check; that Poplar Hill was a post-office between Temperance and Chauncey, the first post-office on the railroad *en route* to Macon from Temperance; that he received the mail at Poplar Hill; that he opened the bag,—unlocked it; that it was locked when he received it, and in good order; that he put the mail intended for Macon back in the pouch, locked it, and delivered it to the mail carrier. The mail carrier was not permitted to have a key to the mail-pouch. Mr. Bussey, the deputy-postmaster at Chauncey, testified that he received the mail that day; that he always kept the mail after it got in from Temperance overnight in his post-office; that he kept it under lock and key; that the mail-bag came in good order; that it was locked, and the mail was kept in his custody until the next day, when he delivered it, on the mail-car to Macon, to the postal clerk or mail agent on the car. He does not remember that Henry Jones, the prisoner, was the postal clerk that day. The government, however, relies upon two "trip reports" which are in evidence. The testimony of the witness who spoke with relation to them is that these trip reports are in the handwriting of Henry Jones. They recite that Henry Jones left Macon on the nineteenth of July, 1884, at 9:25 in the morning, and arrived at Jesup the same day, at 6 P. M., on car 120; that on the twentieth of July, which according to the testimony of the witnesses is the day that this letter would

be sent on the railroad to Macon, Henry Jones left Jesup at 6:44 A. M., and arrived at Macon at 3:30 P. M., on mail car 120. The testimony of Mr. Bussey being that he delivered the mail from Temperance to the postal clerk on the morning of July 20th, these trip reports in evidence are competent to show that Henry Jones made that trip on that day (the 20th) from Jesup to Macon, and these facts are relied on by the government as circumstances tending to trace this check to Henry Jones, and to his custody.

There is no positive evidence which traces the check to Henry Jones' custody, and that recited, in its nature, is circumstantial evidence. I charge you, gentlemen, that a conviction may well be had on circumstantial evidence, provided the circumstances so distinctly point to the guilt of the accused as to leave no reasonable explanation which is consistent with the theory that he is innocent.

Now, do these circumstances so distinctly point to the fact that Henry Jones was the postal clerk on that car No. 120, on the twentieth day of July, 1884, as to leave no explanation consistent with the theory that somebody else may have seen the postal clerk on the train that day? If so, gentlemen, it is your duty to find that he was the postal clerk on that day; and if you believe the testimony of Bussey that he delivered the Temperance mail, and that this letter had not been previously abstracted, and was delivered to Henry Jones, then that will of course have the effect to trace the letter to his custody.

Now, upon that general subject, I charge you this to be the law: That all public officers are presumed to do their duty faithfully until the contrary appears by proof. The postmaster at Temperance is presumed to have done his duty; in other words, is presumed to have locked the mail-pouch, and to have seen that it was in good order. The mail carrier is presumed, in the absence of proof to the contrary, not to have stolen that check or the letter which contained it from the mail-pouch, but to have carried it safely. The postmaster at Poplar Hill is presumed to have seen that the pouch was received in good order, that it was locked; and, if the pouch was in bad order, it is presumed that he would have reported it, as was his duty. The carrier from Poplar Hill to Chauncey is presumed to have done his duty, and it is presumed that he delivered the pouch and the mail safely to the postmaster at Chauncey. The postmaster at Chauncey is presumed likewise to have done his duty, and to have delivered the mail to Macon safely to Henry Jones; and Henry Jones is also entitled to the presumption of having done his duty faithfully, and to have safely delivered the mail to the postmaster at Macon, unless there is proof in the evidence before you which would have the effect of destroying the presumption in his favor.

Now, applying these presumptions to this case, if all these officers of the mail did their duty,—and I charge you that this presumption has the effect of evidence unless there is proof to the contrary,—then the letter, with the check, is traced to the custody of Henry Jones, unless there are facts or reasonable suppositions relating to these circumstances which would justify sensible men, upon their oaths, to perceive and entertain a

reasonable theory that the letter and the check did not reach **Henry Jones.** This would contradict the presumption. That is an application of the rule I have already given you, namely, that, when reliance is had upon circumstances to show a fact, those circumstances must so distinctly point to that fact as to leave no reasonable idea or hypothesis that is inconsistent with the fact.

Now, gentlemen, is there any reasonable explanation arising from the evidence, or the want of evidence, which would authorize you to say that check did not reach Henry Jones? If so, notwithstanding the effect of the presumption that all these officers did their duty, and that the check did reach Henry Jones, it would be your duty to give him the benefit of that explanation, and acquit him. But if there is no reasonable explanation, such as a sensible man would act on or decline to act on in his own concerns, taking all the circumstances together, and considering them with the presumption that all the mail officers are presumed to have done their duty, then you will be justified in concluding that the check did reach Henry Jones.

At that point you will begin another inquiry. If it reached his hands, has it been accounted for satisfactorily after that time? Did the person to whom it was sent receive it? Upon that subject you have heard the evidence of Mr. Burden and Mr. Henry, who testify that the firm of Coleman & Co. did not receive that check. Upon that subject, I call your attention to the testimony of Rosa V. Hill. She tells you that Henry Jones sent her that check in a letter, and this is the letter which she identifies as the one in which he sent it. The letter is as follows:

"MACON, GA., Saturday, 6 P. M., August 16, 1884.

"DEAR FRIEND: I inclose to your address a sight draft for $79.08, which is drawn on J. E. Walker, and indorsed by him, and is now payable to whatever hands it may fall in; and I wish, if you can't use it, that you will please to return it to me at once. Present it to the doctor, and get him to indorse it, and have it cashed, and give you all over $50 that he charges you for his services, which would be at least $25. If he accepts it, you must telegraph me to Brunswick, and say it is accepted and all right. If he refuses, say it is rejected, etc. Don't sign your name, but sign Ottillia or Viola;" etc.

This letter was signed "OTTIE." She testifies that he signed his letters "OTTIE." She testifies that this was the handwriting of all the letters he wrote. W. W. Brown, who was the postmaster at Macon, and who testified that he had ample opportunities of knowing the handwriting of Henry Jones, testified that this letter was in his handwriting. Jo Franks, former clerk in the postal service, testified that he was familiar with his handwriting for several years, had received a great many communications from him, and that this letter, and the other letter which will be in evidence before you, was in his handwriting.

Now, gentlemen, if you believe from the evidence, under the rules I have given you, that this check was traced to the possession of Henry Jones; that it was not delivered to Coleman & Co., the persons to whom the letter inclosing it was directed; but that recently after that time Henry Jones delivered this check to this woman, Rosa V. Hill,—in the

absence of a sufficient explanation of his possession of the check, you would be justified in convicting him. The rule of law is this: that the possession of stolen property, recently after the time when it is stolen, unexplained, is *prima facie* evidence that the person in whose possession it is found was the person who stole it., If so traced to his hands, is this explained by any of the evidence in the case? If it is, and if that explanation is consistent with the theory that he is innocent, it is your duty to give him the benefit of that explanation, and acquit him.

There will be in evidence before you an application for a postal order which you will consider, and the testimony of the postmaster of Jesup, who testified that Henry Jones applied for this order. You will consider this postal order in connection with the letter containing the check, which Rosa Hill testified he wrote, in which letter he states that he had sent her a postal order for that amount. You will consider it as a circumstance which the government insists tends to identify Henry Jones as the guilty possessor of this check. Mr. Smith testified that he saw the letter signed "OTTIE" and the identical check in the possession of Rosa Hill in Memphis, Tennessee, and attempted to get the check cashed for her. He identifies the letter which the other witnesses say is in the prisoner's handwriting.

I repeat, if there is a reasonable explanation consistent with his innocence, it is your duty to find that explanation, and give him the benefit of it; but you must consider these circumstances in connection with all the evidence in this case, in determining the question of his guilt or innocence.

The defendant has proved that up to the time that this accusation was brought against him, that he had a good character for honesty. Now, a good character of a party accused of crime is always evidence fit and proper to be given in his behalf. The good character of the accused may render that doubtful which otherwise would be perfectly clear, and therefore he is always entitled to have the benefit of his good character, and you should weigh it, and give to it such weight as belongs to it. But if you believe from the evidence that he is guilty of the crime charged, and the other evidence in the case shows this to be true, you should convict him, notwithstanding proof of good character, because a man who has a good character may, nevertheless, commit a crime. Still you must consider the good character in connection with all the other testimony in this case.

I charge you that if, on a review of all the evidence in this case, you have a reasonable doubt as to whether or not you should convict the defendant, you should give the defendant the benefit of that doubt, and acquit him. By reasonable doubt you will understand that the court does not mean any fanciful conjecture which an imaginative man may conjure up, but a doubt which reasonably flows from the evidence or the want of evidence; and a doubt for which a sensible man could give a good reason, which reason must be based on the evidence or want of evidence; such a doubt as a sensible man would act upon, or decline to act upon, in his own concerns. If you have such a doubt, the defend-

ant is entitled to the benefit of that doubt, and you should acquit him. But, if you are satisfied from the evidence that he is shown to have committed this crime, I charge you you ought to find him guilty.

There are two counts in this indictment. You can, if you think proper, under the rules I have given you in charge, find the defendant guilty on both, or on one count; or, if you think proper, you can find the defendant not guilty. If you find the defendant guilty on both counts, you will say by your verdict: "We, the jury, find the defendant guilty as charged." If you find him guilty on the first count, say so by your verdict, or on the second count. If you find the defendant not guilty, you will say by your verdict: "We, the jury, find the defendant not guilty."

As you believe from the evidence, so you must find.

The prisoner was convicted.