MARCH TERM, 1890. 335

The State ex rel. Circuit Attorney v. Macklin.

STATE OF MISSOURI *ex rel.* CIRCUIT ATTORNEY, Relator, v. WILLIAM P. MACKLIN, Respondent.

SAME v. HENRY L. ROGERS, Respondent.

SAME v. OSCAR H. BOLLMAN, Respondent.

SAME v. RICHARD BARTHOLDT, Respondent.

St. Louis Court of Appeals, April 1 and May 13, 1890.

1. **Statutes : CONSTITUTIONALITY.** Provisions prescribing the qualications of directors of school boards are germane to the general subject of an act which provides for their election, and an act, which according to its title provides for the election of certain officers, sufficiently indicates by its title that their qualifications are provided for in it. *Held,* accordingly, that section 5 of the act of March 30, 1887, entitled " An act fixing the number of directors in public school boards in certain cities, and providing for election of such directors, and for districting said cities therefor," is not opposed to the provision of the constitution of this state, prescribing that no bill shall contain more than one subject, which shall be clearly expressed in its title.

2. **St. Louis: QUALIFICATIONS OF DIRECTORS OF PUBLIC SCHOOL BOARD.** Section 5 of the act above referred to, which requires that no person shall be eligible for office as a director " who shall not have paid a school tax within said city for two consecutive years immediately preceding his election " construed, and *held* to mean that no person shall be eligible " who shall not have paid, at any time preceding his election, a tax for the benefit of schools within said city for the two consecutive calendar years, next preceding the year of his election, assessed on property in which he has an interest subject to taxation at the date of assessment or date of payment."

3. —— : ——. The payment by a copartnership of a tax in part for school purposes against its personal property is a payment within the purview of said section by one who is a member of the copartnership at the time.

4. —— : ——. The payment of taxes on land by one having a tenancy by the curtesy initiate, out of his own means, constitutes the payment of taxes within the purview of said section.

5. —— : ——. And so will the payment of delinquent taxes on land purchased by the payor, though the land was purchased, and the payment was made, immediately before the election, and for the express purpose of qualifying for office.

6. —— : ——. But if delinquent taxes on land, assessed against the owner, are paid by a stranger, who has no interest in the land, for the purpose of qualifying for office, such payment will not satisfy the requirements of said section.

7. —— : ——. Nor will the payment of taxes for the current year, though made prior to the election, be considered in the determination of the eligibility of directors ; the payment required is that of taxes for the two years immediately preceding the election.

8. —— : ——. Nor is the payment of a merchant's license any evidence of the payment of a school tax, it not appearing that the charge for license included any taxes for schools.

*Original Proceedings of Quo Warranto.*

Writ of ouster denied as to defendants Bollman, Macklin and Bartholdt.

Writ of ouster issued as to defendant Rogers.

*Campbell & Ryan,* for relator.

*Estes, Bashaw & Clark,* for respondents William P. Macklin and Henry L. Rogers.

*Lubke & Muench,* for respondent Richard Bartholdt.

*Jay L. Torrey* and *E. W. Pattison,* for respondent Oscar H. Bollman.

The State ex rel. Circuit Attorney v. Macklin.

OPINION ON DEMURRER TO INFORMATION.

ROMBAUER, P. J.—Under the stipulation filed March 27, 1890, the only question submitted for our decision on this demurrer is, whether the fifth section of an act entitled "An act fixing the number of directors in public school boards in certain cities, and providing for election of such directors, and for districting said cities therefor," approved March 30, 1887, is constitutionally valid.

On the question, whether the whole act is constitutionally valid, as impairing the restrictions imposed upon the legislature in the passage of local acts, or whether said act is to be considered a local or general law, we have heretofore refrained from expressing an opinion, and we desire to be understood as not now passing on that question one way or the other.

The section under consideration is as follows: "Sec. 5. No person shall be eligible for office of director of school board in any such city who shall not have resided in such city and paid a school tax therein for two consecutive years immediately preceding his election, and each director shall also possess such additional qualifications as may be required by existing law or charter."

The constitutional validity of this section is challenged on the ground, that it is touching a subject not clearly expressed in the title of the act, as required by section 28 of the fourth article of the constitution of Missouri, which section, omitting exceptions foreign to this inquiry, is as follows: "No bill shall contain more than one subject, which shall be clearly expressed in its title."

The true scope and meaning of this section has been very fully discussed in *City of St. Louis v. Tiefel*, 42 Mo. 578, which case has ever since been a leading case on that subject. There the title of the act was "An act

to amend an act to enable the city of St. Louis to pro-
cure a supply of wholesome water," approved March
13, 1867. The second section of the amendatory act
provided for a water rate payable by all owners and
lessees, whether they used the water of the city or not,
provided they were notified of the readiness of the water
board to supply them with water, and provided the
board of health by resolution declared that the use of
water from the public water works of the city, in such
houses, was demanded as a sanitary measure. The sec-
tion further subjected the persons who failed so to use
the water to the same penalties as those who used the
water and failed to pay for the same. The provision
was not contained in the original act. Objection was
made that the power thus conferred was extraordinary,
was not germane to the main subject, and that the pro-
visions contained in the section were in nowise referred
to in the title of the act. The supreme court held the
section constitutionally valid, and in so doing Judge
WAGNER in delivering the opinion said : "In the act
to which the section under consideration is amendatory,
the title is, 'To enable the city of St. Louis to procure
a supply of wholesome water.' To accomplish that
object it was necessary to act through agents, and hence
a board of water commissioners was constituted ; and,
as a consequence, their powers, duties and responsibili-
ties were defined. That the board of health should say
when in their judgment it was necessary as a sanitary
measure that certain houses should be supplied with
water, does not alter the case. They take no steps
toward carrying out the act, nor do they exert any
active agency in the matter. When their views are
made known, the board of water commissioners then
act, if they see proper. The section, although it con-
fers extraordinary powers, relates clearly to the subject
intimated in the title, and is entirely congruous and
connected with it. Every person, upon an inspection
of the title, would naturally expect to find the full

scope of the powers, duties and privileges of the commissioners set forth in the act."

We are referred by respondents to *State v. Everage*, 33 La. Ann. 120 ; *State v. Demouchet*, 40 La. Ann. 205, and *Brown v. State*, 79 Ga. 324, as supporting a contrary view. If they do, they are entitled to no consideration when opposed to the decisions of our own supreme court.

The views expressed in *City of St. Louis v. Tiefel* were approved in *State v. Mathews*, 44 Mo. 523; *State v. Bank*, 45 Mo. 536, and *State v. Mead*, 71 Mo. 266. In the last case cited the supreme court held that, "If any matter contained in a statute be objected to, as not referred to in the title, or that the bill contains more than one subject, the objection urged will not be held well taken, if the clause or section to which objection is raised be germane to the subject treated of in the title." It was there held that a section providing for filling, by appointment of the governor, vacancies temporarily occurring in offices filled by election in the first instance was germane to the subject of an act and sufficiently expressed in its title, which was, "Concerning popular elections."

It is needless to elaborate this subject further. It is evident from the above authorities that, in this state, provisions prescribing the qualifications of directors, are germane to the general subject of an act which provides for their election, and it must also be conceded that an act, which, according to its title, provides for the election of certain officers, sufficiently indicates by its title that their qualifications are provided for in it. The respondents' demurrer is overruled. All concur.

### OPINION ON THE MERITS.

ROMBAUER, P. J.—The proceeding in these cases is upon official information filed by the circuit attorney of St. Louis, charging that the respondents have

usurped and do unlawfully usurp the offices of directors of the Board of President and Directors of the St. Louis Public Schools, not being legally qualified to hold such offices. The cases were tried upon separate records, but, as the main question involved in all of them is substantially the same, we have concluded to dispose of them together, first stating our conclusions of law, and then their application to the case made by the evidence of each individual respondent.

The Board of President and Directors of the St. Louis Public Schools is a public school corporation in and for the city of St. Louis, which is a city of over three hundred thousand inhabitants, and an act of the legislature, approved March 30, 1887, provides in its fifth section among other things : "No person shall be eligible for office of director of school board in any such city who *shall not have   *   *   *   paid a school tax therein for two consecutive years immediately preceding his election*, and each director shall also possess such additional qualifications as may be required by existing law and charter." It was admitted, by the relator in the case of each respondent, that he was duly elected, and was also duly qualified at the date of his election for the office in all other respects, save the payment of a school tax by him in said city for two consecutive years, immediately preceding his election. On this fact, and on this fact alone, issue was taken by the pleadings.

After the institution of these proceedings, the respondents challenged the constitutional validity of the law as a whole, and also the constitutional validity of the fifth section, separately and on independent grounds. We refused to pass upon the constitutional validity of the act as a whole, as not affecting the result as far as respondents were interested therein one way or the other. The attorney general of the state thereupon, deeming the question of sufficient public importance, instituted proceedings by official information

before the supreme court against two of the directors, and that court, in an elaborate opinion carefully reviewing the entire act in all its parts, decided that the act in all its parts was constitutionally valid, and by such decision set all objections to the constitutional validity of the act or any of its parts finally at rest, and removed any constitutional questions from our consideration therein.

The language of the act is, "that no person shall he eligible * * * who shall not have paid a school tax therein for two consecutive years immediately preceding his election." The contention of the relator is that the true meaning of this clause is, who shall not have paid a school tax assessed against him for the benefit of schools in such city in each year for two years immediately preceding his election. That is to say, if a director is elected on the fifth day of November, 1889, in order to be eligible, he must, according to the relator's contention, have paid a tax within the year between November 5, 1887, and November 5, 1888, and one within the year from November 5, 1888, to November 5, 1889, and such tax must have been assessed against him or his property.

This contention is untenable. The payment of a tax for a preceding year can mean only either the fiscal year or the calendar year. There is no fiscal year designated as such in this state, although taxation is of property from June to June. The scheme of assessment in the city of St. Louis is somewhat different from that employed in other parts of the state. It provides for district assessors, who shall list and assess property, as of the first of June in each year, between the first of June and the first Monday in January next following. They make their report to the president of the board, who makes up the assessment books on or before the first Monday in March. The books are then submitted to the board of equalization, and when the proper

corrections are made, an abstract thereof is delivered to the mayor of the city and state auditor on or before the fourth Monday of May. The taxes assessed in said book are known as the taxes for the year in which the assessment is finally completed, corrected and abstracted, although assessed as of the first day of June in the year next preceding. They are so stated on the books, and so mentioned in the tax bills. There is, therefore, no other tax known, than a tax for a calendar year, when reference is made to a tax for a certain year. It results from this, that, when reference is made to taxes for two consecutive years immediately preceding an election, the term has reference to the calendar years preceding the year in which the election takes place. This is the common and ordinary sense of the term used and, therefore, must be taken to be the sense in which the legislature has used it.

Nor is there any force in the argument that the taxes must be paid *within* each calendar year. The law simply requires that it shall be paid *for* two consecutive years, and not that it shall also be paid *within* those years. There is no ambiguity in the terms used and we cannot read them otherwise than they are written. Our duty is to declare and not to make the law. We had occasion to go over this subject in the case of *Boyd v. The J. M. Ward Furniture Co.*, 38 Mo. App. 210, when an argument as to the inconvenience of a certain construction was made, to which we replied by quoting Chief Justice MARSHALL in *United States v. Fisher*, 2 Cranch., 386, that, "where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain, *in which case it must be obeyed.*" We quote in that case the emphatic declarations of Chief Justice TINDALL in *Everett v. Wells*, 2 Scott. N. R. 531, and Lord TENDERDEN in *Brandling v. Barrington*, 6 Barn. & Cres. 467, which are to the same effect, and

concluded by the statement of the very obvious proposition, that the laws and liberties of a nation would stand on but a slender foundation, if the judiciary would assume the power of first finding an ambiguity in a law where none exists, and then resolving that ambiguity according to its own notions of right and expediency.

While we are clear that the word tax, in the connection in which it is used in the law, means a tax or impost on the person's property, we are equally clear that an antecedent assessment, against *the person himself*, is not essential. A person is not relieved from paying taxes on property owned by him, simply because it is erroneously assessed to another, nor is he under any legal obligation whatever to pay a tax on realty in which he has no interest, simply because it is assessed to him. The assessment of a tax creates no debt in the ordinary sense of the term. *City of Carondelet v. Picot*, 38 Mo. 125 ; *Peirce v. City of Boston*, 3 Met. 520 ; *Green v. Wood*, 7 Ad. & Ell. N. S. 178. If a person owns an interest in property and pays a tax thereon, he pays *his* tax regardless of the fact to whom the property is assessed.

A further and equally conclusive argument is found in the fact that the law under consideration does not require an antecedent assessment *against the person* to make him eligible. It does require an antecedent assessment, otherwise the liability would not be in the nature of a tax. In determining the meaning of words and phrases used in a law, where they admit of more than one meaning, it is the duty of the courts to adopt that meaning which is in harmony with the context of the entire law, and prevents the mischief sought to be remedied ; but this does not authorize courts to interpolate into the law new provisions, in no way necessary to the clear definition of terms actually employed by the legislature.

Our conclusion is that the true construction of the phrase employed, "who shall have paid a school tax

within said city for two consecutive years immediately preceding his election," is, "*who shall have paid, at any time preceding his election, a tax for the benefit of schools within said city for the two consecutive calendar years, next preceding the year of his election, assessed on property in which he has an interest subject to taxation, at the date of assessment or date of payment.*" The last qualification is inherent in the term employed, because, if he has no such interest the assessment as to him is no tax.

Having thus defined the meaning of the law, we proceed to apply it to each individual respondent, according to the uncontroverted evidence.

I.   *Oscar H. Bollman* was elected November 5, 1889. In the year 1888, he was a member of the firm of H. Bollman & Son, and, in the year 1887, a member of the firm of Bollman Bros. A tax on personal property was assessed against the last-named firm in 1887 and paid by the firm April 26, 1888. A tax on personal property was assessed against the first-named firm for the year 1888 and paid by the firm December 31, 1888. Part of the tax on both these bills was for school purposes. As each member of the firm has an individual interest in its property, which under the laws of this state is subject to execution, therein materially differing from property held by a corporation, the evidence offered by him shows that within the definition above given, he complied with the requirement in regard to paying taxes, as a condition precedent to his eligibility. This respondent also offered evidence that the two firms, above stated, had paid a merchant's license to the city of St. Louis for the years ending respectively on the first Monday of July, 1887, and first Monday of July, 1888, and claimed that because it was the duty of the city register, under the decision of *State v. Tracy*, 94 Mo. 217, to extend a tax for the schools on such licenses, the production of the license was evidence of the payment of such tax. This contention is untenable. It

did not appear that the register had extended the tax, or even that it was ever levied, hence the production of the licenses could in no view of the law be evidence of the *payment* of a school tax.

II. *William P. Macklin* was elected November 5, 1889. He paid November 4, 1889, a school tax assessed for the year 1888 against him on a piece of real estate situated within the city of St. Louis, and owned by himself. He also proved that for years anterior to his election, and at the date of the assessment and payment of the tax bills hereinafter recited, he was the husband of Lillian J. B. Macklin, with issue born of such marriage ; that said Lillian was the owner, as of a legal estate, of an undivided half interest in certain realty in the city of St. Louis, of which property, by virtue of his marital rights as such husband, he collected the rents ; that school taxes were assessed against said property for the years 1887 and 1888, which he paid with his own means, on December 28, 1887, and December 29, 1888, respectively.

The relator challenged these last payments as insufficient to qualify the respondent Macklin, but the objection under our definition of the meaning of the clause is untenable. The respondent had, notwithstanding the married woman's act, by virtue of his marital rights, an interest in the property which he was justified to protect. *Clark v. Bank*, 47 Mo. 17 ; *Tillman v. Tillman*, 50 Mo. 40 ; *Dillenberger v. Wrisberg*, 10 Mo. App. 465, and his life-interest was chargeable with such taxes. 1 Washburn on Real Prop. [5 Ed.] p. 130. Provisions of this character are not construed with the strictness contended for by the relator. Thus in Massachusetts, where the law provided that, to entitle a man to vote, he must have paid a state or county tax by himself or his parent, master or guardian, it was held that a voter was qualified, if the tax was paid for him by another, who was neither his

parent, master or guardian, even though paid without his previous authority, if he recognizes the act and repays or promises to repay the amount. *Humphrey v. Kingman*, 5 Met. 162. And, although it was held in the opinion of the judges, given to the house of representatives in that state, 18 Pick. 575, that, after a general assessment of a tax has been made, and returned to the collector, the assessors could not assess a poll tax on anyone simply for the purpose of qualifying him to vote, the decision was put upon the ground that, after an assessment made and returned, the assessors were *functus officio* for that year, and could not assess any tax whatever.

We must conclude, therefore, that the respondent Macklin has shown himself to have been duly qualified at the date of his election.

III. *Richard Bartholdt* was elected November 5, 1889. He proved that, on October 17, 1889, he paid a personal tax bill assessed against him for the year 1889. As this was not the tax for a year preceding his election, within our definition of the term, that evidence is irrelevant. He further proved that, prior to his election, having doubts as to his qualifications, he bought a small piece of property in the city of St. Louis, on which there were delinquent school taxes for the years 1887 and 1888 and paid them, the one on the eighteenth, and the other on the nineteenth, of October, 1889. He testified that he bought this property, partly as a speculation and partly for the purpose of rendering himself eligible as a school director, by the payment of such delinquent taxes. At the date when these taxes were paid the respondent unquestionably had an interest in the land, which he had a right to protect, although he had none at the date of their assessment, and, by paying the taxes, he did pay taxes for the benefit of schools within the city of St. Louis *for* two consecutive years immediately preceding his election.

The case of this respondent presents some difficulties owing to the fact that what to the common understanding would seem to be the aim and object of the qualification provided for in the statute is not expressed in the language used.   To the common understanding it would  unquestionably seem  that what the legislature intended to accomplish was to make no one eligible as a director, who has not for a period of two years consecutively, immediately preceding his election, contributed to the support of schools within the city, by payment of taxes assessed against him or against his property.   But, if the legislature so intended, it certainly did not so say, and it is the imperative duty of courts to gather the intention of the legislature from the words employed.   As Lord TENDERDEN aptly remarked in *Brandling v. Barrington, supra*, "there is always danger in giving effect to what is called the equity of a statute, and it is much better to rely on and abide by the plain words."   Provisions touching the qualifications of officers and electors, contained in the constitutions and laws of other states, are drawn with the most painful detail, and an extensive examination of this subject has failed to bring to our notice a case, where the mere fact that the person affected has paid taxes immediately preceding an election with the *sole* object of obtaining thereby a qualification as elector or officer, which he did not otherwise possess, was treated as a fraud upon the law.

These considerations lead us to conclude that, although the case of respondent Bartholdt may stand upon the verge, it is our duty to declare that he has shown himself duly qualified.

IV.   *Henry L. Rogers* was elected November 5, 1889.   He paid no taxes whatever for the year 1887.   On November 4, 1889, he called at the collector's office, and, finding that no taxes were assessed against him for the years 1888 and 1889, he paid two tax bills assessed

against real estate in the city of St. Louis of one Julius Greffet, for the years 1888 and 1889, aggregating two dollars and twenty cents. He had no interest whatever in the property of Greffet, on which he paid these taxes, and did not even pay them upon the request of Greffet. There was, on that very day, a delinquent tax bill for the year 1887 in the collector's office against the respondent, for which the respondent did not even inquire. It is clear, under the view of the law taken by us, that this respondent has not properly qualified for two reasons : *First*, he paid no taxes whatever for the year 1887, which was one of the two consecutive years immediately preceding the year of his election, which in itself is fatal to his qualification, and, *next*, the payments made by him on property, in which he had no interest whatever, without even the owner's request, was in no sense the payment of a tax as far as he was concerned, but a mere sham.

It results from the foregoing that the writ of ouster in the cases of Bollman, Macklin and Bartholdt must be denied, and that, in the case of Rogers, a writ of ouster must issue. So ordered. All the judges concur.