No. 2902.

Lon Willard v. The State.

1. Practice — Charge of the Court — Circumstantial Evidence.—
   Omission of the trial court to instruct the jury upon the law of circumstantial evidence, in cases wherein the State relies solely upon that character of evidence, is fatal error.

2. Same — Confession.—A promise on the part of an accused to pay the owner for the alleged stolen property, although a circumstance that will tend to establish his guilt of the theft, is not a confession that he took the property, and hence is not a confession of theft.

Appeal from the District Court of Eastland. Tried below before the Hon. T. H. Conner.

The conviction in this case was for the theft of a cow, the property of J. S. Holloway, in Eastland county, Texas, on the fifteenth day of January, 1888. The penalty assessed against the appellant was a term of two years in the penitentiary.

J. S. Holloway was the first witness for the State. He testified, in substance, that in January, 1888, he had possession of a small stock of cattle that ran on the range near the defendant's house, in Eastland county. On or about the tenth day of that month, he missed several of the animals from the range, and among them a nine year old red and white pided cow, branded ZILPH on the side and hip. She had very peculiar horns, "very large, growing out towards the front, turned back, twisted up, and flared out at the top." Soon after he missed the cow, the witness went to the house of Ed Willard, the brother of the defendant, where the defendant lived. He found the defendant and Ed Willard in the horse lot. The defendant, who manifested great excitement and uneasiness, soon went back to the house, when witness asked permission of Ed Willard to search the premises for cow heads. Witness then went through the lot into the field, followed by Ed Willard. Behind an old stable that stood in the field he found the skeleton heads of several neat cattle, and among them was one which he recognized by the peculiarity of the horns to be the head of his missing cow. The nose had been cut off and the sides of the head had been skinned, but a small patch of skin, about six inches square in size, and of color corresponding with that of the witness's cow, was left just back of the horns. Witness told Ed Willard that he knew by the horns that the head was that of his missing cow. He then placed the head and horns on the old stable, and told Ed Willard that he would hold him, Ed, responsible for the safety and preservation of the same. The witness and Ed then joined the defendant at the house, when Ed and defendant told him that his ZILPH cow was still on the range. Witness knew to the contrary, but asked Ed and defendant to ride the range with him; which they refused to do. Witness then went to the residence of Mr. M. Z. House, and with House returned to Willard's. On the way to Willard's, House told witness that the defendant killed his said cow. Upon reaching Willard's house, Mr. House called the defendant to an old wagon, where they held a private conversation for about twenty minutes. Mr. House then called witness, and said that defendant was ready to settle for the cow. Defendant asked witness how much he would take for the cow. Witness replied that he would take fifteen dollars, and would agree not to prosecute defendant if he would promise not to kill any more of his cattle. Defendant demurred to the price at first, claiming that ten dollars was full

price, but witness insisted upon fifteen dollars. Defendant then agreed, but asked for time until the following Saturday to pay the money. Witness gave him the time, promising not to prosecute if he paid the money on the said Saturday; the money was not paid as promised, and witness filed complaint, charging defendant with the theft of the cow, and defendant was arrested. Witness went to the old stable on the night of defendant's arrest to get the horns, but they had disappeared.

On his cross examination the witness said that the defendant and his brother Ed ran a slaughter pen at the latter's house, and that as soon as he missed the cow he suspected one or the other, or both of the brothers, of the theft of the animal. The animal described was one of several owned by Mr. Hague of Johnson county, but which were under the care, management and control of the witness. The animal described was not branded with the letters MAK nor X. The witness denied that he ever, at his home or elsewhere, said to M. R. House: "We will put the killing of this cow off on Lon Willard. He is a boy, and that will protect us." No person had the witness's consent to take or kill the said cow.

Houston and Hulin Brashear testified, that they knew the ZILPH cow described by the witness Holloway. She was a noted animal on the range because of the peculiarity of her horns, which these witnesses described as did Holloway. She was not branded MAK nor X on the side. The witnesses last saw that cow on the range about Christmas, 1887. The State closed.

M. Z. House was the first witness for the defense. He testified that, some time in January, 1888, he went with J. S. Holloway to the house of Ed Willard to see the defendant about the ZILPH cow. Upon reaching the house the witness called the defendant to one side and had a short conversation with him. He then called Holloway, who came to where he and defendant were. Holloway then told defendant that he wanted fifteen dollars for the cow, and that, if he would pay that sum and promise not to kill any more of his cattle he would not prosecute him. The defendant replied that he did not kill the cow and would not pay for her.

Cross examined, the witness stated that he used to butcher cattle and sell beef in Eastland county. His brother, M. R. House, did his butchering for him at Willard's slaughter pen during January, 1888. Defendant told witness that he killed the cow,

whose head and horns Holloway put on his stable, but that the cow was one of the MAK cows that belonged to his mother. The witness never saw the head and horns which Holloway put on the stable. He knew the ZILPH cow, which was a noted animal on the range. An indictment for killing a cow in January, 1888, was pending against the witness in this court.

M. R. House, testified, for the defense, that on the Sunday after Holloway put the horns on Willard's stable he and his brother, M. Z. House, went to Holloway's house. After sitting in the house a time witness and J. S. Holloway went outside and had a short conversation, in the course of which Holloway said to witness: "We will put this off on Lon Willard, as he is a boy, and that will protect us." Witness butchered cattle for his brother in January, 1888, at Willard's slaughter pen, but did not know who killed the ZILPH cow.

Cross examined, the witness stated that Holloway, in proposing to put the killing of the cow on defendant for protectection of "us," meant by "us," himself and the witness. He declared, however, that he and Holloway did not kill the said cow, nor did he know who did. Witness bought the carcass of a cow from defendant in January, 1888, but did not know what cow it was. From three to five cattle per week were killed during January, 1888, at Willard's slaughter pen. The heads were always left in the pen.

Mrs. Kimble, the mother of the defendant, testified, in his behalf, that some time after Holloway came to her house to look among the cow heads, her sons Ed and defendant took her to the lot to examine a cow's head and horns. They showed witness a head with horns that witness believed to have been the head of her certain red cow, which defendant killed a short time before. Witness did not see where her sons got the head and horns, nor did she observe anything peculiar about the shape of the horns.

Ed Willard testified, for the defense, that he was at home when Holloway came to his house, hunting cow heads, and found one in the field, the horns of which "grew out towards the front, turned back, twisted up and flared out at the ends," and which he said he believed to be head and horns of the ZILPH cow. Holloway put the head and horns on an old stable, and asked that they be permitted to remain there. He and witness then went back to the house and joined the de-

fendant. Holloway then requested witness and defendant to hunt the range with him; which they refused to do, and Holloway went off. He returned that evening with M. Z. House, and, in the course of a conversation which ensued, demanded of the defendant the payment of fifteen dollars for the cow. Defendant, in reply, cursed Holloway and told him that, as he had not killed his cow, he would neither pay nor promise to pay anything for her. The head and horns which Holloway found in the field and put on the stable were the head and horns of a red cow branded MAK and X, which belonged to witness's mother and which the defendant killed a few days before. It was the same head which witness and defendant exhibited to their mother in the lot after Holloway left.

H. G. Ainsworth testified, for the defense, that he was at Willard's slaughter pen in January, 1888, and saw the defendant butchering a red cow branded MAK and X. The horns of that cow were small and smooth, and were not peculiar in shape. Ed Willard afterwards showed witness some horns which witness believed to be the same, and said they were the horns Holloway put on the stable.

The motion for new trial raised the questions discussed in the opinion.

*Hammons & Cotton*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Willson, Judge. This conviction is based wholly upon circumstantial evidence, and the court, having failed to instruct the jury with regard to that character of evidence, committed error for which the conviction must be set aside. (Willson's Crim. Stats., sec. 2342.)

Holloway, the alleged owner of the cow, testified that the defendant promised to pay him fifteen dollars for the cow, etc. This did not prove a confession by defendant of the theft of the cow, and can not be regarded as more than a circumstance tending to establish defendant's guilt of the theft. If defendant had confessed that he took the cow, such confession would have been direct evidence, and would have dispensed with a charge upon circumstantial evidence; but there is no proof in

the record that he made such a confession. (Eckert v; The State, 9 Texas Ct. App., 105.)

Other questions presented in the record will not arise on another trial, and need not be determined.

Because of the error in the charge, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*