199 So.2d 867

**STATE of Louisiana**

**v.**

**Crowell ANDRUS and Aaron Andrus.**

**No. 48363.**

June 5, 1967.

Rehearing Denied June 30, 1967.

Paul C. Tate, Mamou, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., L. O. Fusilier, Dist. Atty., J. William Pucheu, Asst. Dist. Atty., for appellee.

HAWTHORNE, Justice.

Crowell Andrus and Aaron Andrus, indicted for the crime of theft of cattle de- nounced by R.S. 14:67.1, were placed on trial before a jury on March 7, 1966, and after trial were found guilty. Each was sentenced to serve five and one-half years in the state penitentiary. They have appealed, relying for reversal on a number of bills of exception.[1] All of the evidence adduced was made a part of the bills.

A somewhat detailed statement of fact is necessary for an understanding of the issues raised in this case. On the night of July 24, 1965, at about 9:00 o'clock a resident of Ville Platte, Evangeline Parish, who was driving along the highway, saw a light blue old-model pickup truck parked near the highway with its tailgate down and lights burning, and close to the truck was a dead calf. Coming almost to a stop near the side of the truck, he saw no one in or near the vehicle. He drove along the highway for a short distance, but, feeling that something was wrong, pulled off the highway and turned off the lights of his car. After waiting a short time, he decided to return to the place where he had seen the truck and the calf, and as he approached that place, the truck which had been parked by the highway started moving and drove past him. He drove beyond the scene for a short dis-

[1]. Some of the bills of exception reserved during the proceedings below were not perfected; hence the perfected bills upon which the defendants rely are not numbered consecutively. Some of the bills, for example Nos. 1 through 4, were not properly perfected under the provisions of former R.S. 15:499 and 500. Another bill, No. 27, was not argued or briefed, is considered abandoned, and in any event is without merit.

tance, turned around and repassed it, and noticed that the body of the calf had been moved somewhat. He continued down the highway, and not far from where he had seen the calf he noticed the same truck parked about 50 feet off the highway with its lights burning. When he returned home, he called the sheriff's office and reported to a state trooper what he had seen.

The state trooper and several deputy sheriffs of Evangeline Parish went to the scene to investigate, and at their request the witness who had reported the occurrence joined them there. When they arrived, the body of the calf was gone. The witness told the officers all he had seen, and described the truck. At the scene the officers noticed tire tracks, which they photographed, and a certain amount of blood and cow's hair. At or near this place there was a cow which was lowing or bellowing for her calf. They drove her away, but she repeatedly returned to the spot. It was shown at the trial that this cow and her calf, which grazed on the open range, each bore the brand of Everett Kelly. Kelly testified that he had seen the cow on the afternoon of July 24 with her calf, but that when he saw her the next morning, her udder was full and the calf was no longer with her.

Another witness, who was also driving on the highway at about 9:00 on the night of July 24, saw the dead calf and the light blue pickup truck parked near it, and also saw nearby the calf's mother and other cattle which he recognized as belonging to Everett Kelly. Shortly afterwards he went to the home of Kelly and told him what he had seen, and Kelly, who was shown to be the owner of the calf, accompanied him back to the place where the dead calf had been lying. There they found the officers conducting an investigation.

During the course of the officers' search for the truck that same night, one of them, a deputy sheriff, at about midnight observed lights burning at the home of the defendant Crowell Andrus and some activity at the barn there. This officer, who remembered that Crowell Andrus had a truck which fitted the description previously given of the truck seen near the calf's body, parked his car on the highway near Andrus's home, and a short while later the defendant Crowell Andrus, accompanied by his codefendant Aaron Andrus, drove his light blue pickup truck onto the highway. The officer stopped the truck about a quarter of a mile from Andrus's home. As he walked up to the truck with a flashlight, he saw in plain view an uncovered tub of meat in the rear of the truck. Another officer arrived. Some conversation took place between these officers and the two defendants, and the officers were told that the meat in the truck came from a calf belonging to

Crowell Andrus which had been killed on his place and butchered in his barn. Both defendants made other remarks which we shall discuss later. Both were then placed under arrest.

The officers then requested and were readily given permission by Crowell Andrus to search his barn where he said the calf had been butchered. At this place they were joined by two other deputies. There they found evidence that a calf had been recently butchered, the entrails still being warm. However, they were unable to find the hide or the head, which Andrus stated he had given to his dogs. Crowell Andrus, who had told the officers that the meat in the truck had been sold by him to Aaron Andrus, said that the rest of the meat was in his deep freeze; and he gave his consent and permission for the arresting deputy and the trooper to enter his house, and in fact took them to the freezer and assisted them in removing the rest of the meat from the freezer.

Both Crowell Andrus and Aaron Andrus testified at the trial and denied the theft, contending that the calf butchered was the property of Crowell Andrus.

## MOTION TO SUPPRESS

Prior to trial the accused timely filed a motion to suppress certain evidence,[2] alleging on information and belief that the evidence consisted of meat and various parts of a calf. The defendants sought to have this evidence suppressed on the ground that the search and seizure which produced these objects were illegal because there was no valid arrest of these defendants and because these objects were obtained without a search warrant from the pickup truck and the house of Crowell Andrus. Following a hearing the motion was denied, and the court ruled the evidence admissible on the ground that the State had shown it was legally seized as incident to a lawful arrest and a search with consent. Bill of Exception No. 6 was reserved to this ruling.

■ From the facts and circumstances within the officers' knowledge,[3] it is obvious that they were justified in stopping the defendants' truck in the course of their investigation of the felony.[4]

As a deputy sheriff approached the light blue pickup truck, there was clearly visible in the rear of this vehicle an uncovered tub

---

2. See State v. Davidson, 248 La. 161, 177 So.2d 273; State v. Rasheed, 248 La. 309, 178 So.2d 261.

3. In determining whether the ruling on the motion to suppress was correct we are not limited to the evidence adduced at the trial of the motion, but may consider all pertinent evidence given at the trial of the case. In accord: People v. Braden, 34 Ill.2d 516, 216 N.E.2d 808; Common-

wealth v. Young, 349 Mass. 175, 206 N.E. 2d 694.

4. Defendants' argument that they were stopped merely for defective lights, a minor infraction which did not justify a search, cannot prevail, when the facts gave the officers ample reason to investigate the truck and its occupants' possible connection with the theft.

of fresh meat. Aaron Andrus said the meat was deer meat. Another officer, the state trooper, who arrived in a few minutes, refuted that it was deer meat, identifying it as beef, and saying it was probably from the calf killed near the highway. Crowell Andrus agreed that it was calf meat, but said it was from a calf belonging to him which had been killed on his property and butchered in his barn. He also said that if the officers would keep their mouths shut, he would gladly pay for the calf if they knew to whom it belonged. Following this statement the deputy sheriff told the defendants they were under arrest.[5] Crowell Andrus told the officers that the rest of the meat was in his freezer.

## Legality of the Arrest

█ The defendants contend that an unlawful search of the truck was made because the arrest was illegal, being without a warrant. No search was required to discover the meat. It was in plain view, and its discovery violated no constitutional right of privacy of the defendants. United States v. Callahan (D.C.Minn.1964), 256 F.Supp. 739; Commonwealth v. Anderson, 208 Pa. Super. 323, 222 A.2d 495 (1966); State v. Smith (Fla.D.C. of App.1966), 193 So.2d 23; McCollum v. State (Miss.S.Ct.1967), 197 So.2d 252; State v. Bell (1967), 270 N. C. 25, 153 S.E.2d 741.

Under the law of this state a peace officer may without a warrant arrest a person when a felony has in fact been committed, or when he has reasonable cause to believe that a felony has been committed, and he has reasonable cause to believe that the person arrested committed the felony. Former R.S. 15:60.

█ The facts and circumstances in this case amply demonstrate that the officers had reasonable or probable cause to arrest these defendants. At the time the truck was stopped, the officers by the information given them, and by their own investigation, had reasonable cause to believe that a felony had been committed[6] and to stop-

5. The contention of counsel for the defendants that the arrest must be considered as made the moment the truck was stopped and probable cause be determined as of that moment cannot prevail. The time of arrest is a question of fact to be determined in each case. Rios v. United States (1960), 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; see Busby v. United States (C.A.9 1961), 296 F.2d 328, cert. den. 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed. 2d 278; Wilson v. Porter (C.A.9 1966), 361 F.2d 412; see also Gilbert v. United States (C.A.9 1966), 366 F.2d 923; United

States v. Thomas (S.D.N.Y.1966), 250 F. Supp. 771.

6. The argument is made that there was no probable cause because the witness who reported seeing the dead calf was unknown to the state trooper and reliability of information was thus lacking. The deputy sheriff who stopped defendants and arrested them had known the witness for over 30 years. The composite knowledge of the officers at the arrest can establish probable cause. Miller v. United States (C.A.5 1966), 356 F.2d 63; State v. Fioravanti, 46 N.J. 109, 215 A.2d

the truck for investigation; and in addition to the other facts the fresh meat, clearly visible in the back of the truck, and the conflicting and unsatisfactory explanations of the defendants unquestionably gave the officers reasonable cause to believe that they had committed the theft and to arrest them. Therefore the seizure of the meat in the truck was incidental to a lawful arrest.

### Consent for Search of the Premises

The defendants contend that no valid consent was given for a search of the premises because there was no intelligent waiver and no voluntary waiver of the right to refuse to submit to search without a warrant inasmuch as the officers gave no warning of the constitutional right to refuse a search before obtaining the consent and inasmuch as the defendants were under arrest at the time the consent was given. The defendants cite the recent case of United States v. Blalock (E.D.Pa.1966), 255 F. Supp. 268, to support their contention that

the State must make proof of consent by showing that before the consent was sought, warning was given of their constitutional right to refuse to submit to a warrantless search.

▇▇ The Fourth Amendment protects against *unreasonable* searches and seizures,[7] and the burden is on the State to establish reasonableness of the search and seizure when the evidence · obtained by it is objected to as inadmissible. When the State relies on consent to establish reasonableness of the search, the burden is on it to show by clear and convincing evidence that the consent was given freely and voluntarily. See State v. Pennington, 244 La. 650, 153 So.2d 876; State v. Turner, 248 La. 141, 177 So.2d 115; State v. Stokes, 250 La. 277, 195 So.2d 267.[8] The validity of the consent must be determined by the facts and circumstances of each case. No decision of the United States Supreme Court imposes the burden on the State to show warning was given of constitutional rights under the Fourth Amendment before the

16 (1965); Mears v. State (Nev.Sup.Ct. 1967), 422 P.2d 230.

7. The Fourth Amendment to the Constitution of the United States reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

8. More latitude in determining the standard of proof for establishing the reasonableness of searches and seizures is allowed the states than is revealed by the Pennington and Turner cases since Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, wherein it was made clear that the states are free to develop their own workable rules governing arrests, searches, and seizures consistent with the fundamental criteria laid down by the Fourth Amendment.

consent was obtained. We are not prepared to adopt as the rule in this state the high standard of proof required by the federal district court in Pennsylvania in Blalock, supra.[9]

The very request for permission to search in this case clearly conveyed that a negative response was within the defendant's rights. Crowell Andrus, whose premises were searched, knew that he was believed to have committed cattle theft and that the officers were asking to search for more evidence of that theft when they sought his permission to search the premises. The consent was freely and intelligently given in this case.

Several federal cases are cited by defendants to support their contention that when a defendant is under arrest, he is deemed to be under such duress or coercion that he cannot voluntarily consent to search. The courts of at least one circuit invariably hold that consent while under arrest is invalid, while courts of other circuits make further inquiry into all the facts and circumstances. The federal high standards of proof do not govern state determination of consent even where the accused gives consent while in custody. See Hubbard v. Tinsley (C.A. 10 1964), 336 F.2d 854. The fact that the consent was given while the defendant was under arrest in this case does not, in our opinion, necessarily render the consent involuntary. In accord: State v. Plas, 80 Nev. 251, 391 P.2d 867 (1964); Barron v. State, 109 Ga.App. 786, 137 S.E.2d 690 (1964); State v. Yoss, 146 Mont. 508, 409 P.2d 452 (1965); McNear v. Rhay, 65 Wash.2d 530, 398 P.2d 732 (1965); Lucas v. State (Tex. Cr.App.1963), 368 S.W.2d 605, cert. den. 375 U.S. 925, 84 S.Ct. 271, 11 L.Ed.2d 167; Carter v. State, 236 Md. 450, 204 A.2d 322 (1964); see United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Annotation, 9 A.L.R.3d 858, 880. The fact of arrest, of course, naturally prompts a court to make a particularly severe scrutiny of all the other facts and circumstances, especially those connected with the manner of arrest and the nature of the custody.

The State here has shown that no coercion, actual or implied, was produced by the arrest in this case to cause the defendant Crowell Andrus to consent to a search of the premises. He was told that he was under arrest by a deputy sheriff while he was sitting in his truck with his codefendant and the deputy was standing outside the truck with the state trooper. The deputy and Crowell Andrus were acquaintances, and there was no necessity for physical restraint of the defendant, nor was

9. Courts in other states have rejected the same contention made by defendants here. State v. Roberts, 55 Cal.Rptr. 62 (3d Dist.Ct. of App.1966); People v. Chaddock, 57 Cal.Rptr. 582 (2d Dist.Ct. of App.1967); Commonwealth v. Anderson, 208 Pa.Super. 323, 222 A.2d 495 (1966).

any physical restraint even attempted. When the defendant was asked for permission to search, he gave that permission unqualifiedly, no doubt because under his version of the possession of the meat in the truck the search would produce nothing more than cumulative evidence of a butchering of his own calf. He was permitted to drive his own vehicle back to his home, and the officers followed in theirs. At the house he led the way to the barn, showed them the remains of the butchering there, showed them the meat in the freezer in his house, and assisted in its removal. The defendant confirmed in his own testimony that although the officers did not have a warrant, he gave them full permission to search and showed them where the meat was and helped them to take it out. This is a clear case of free and voluntary consent.

The motion to suppress was properly overruled, and this bill is without merit.

## INDICTMENT

The indictment in this case, which tracks the language of the short form authorized by former R.S. 15:235, charges that on or about July 24, 1965, Crowell Andrus and Aaron Andrus "committed the theft of a certain animal, to wit: One red and white calf, weighing approximately 275 pounds". Counsel attacked this indictment in a motion to quash and in a motion in arrest of judgment. Both motions were overruled,

and to the overruling of the motion to quash Bill of Exception No. 5 was taken.

■ Counsel alleges in the motion to quash that the indictment is fatally defective because it "fails to apprise defendants of all the elements of the crime charged". In the motion in arrest he alleges that the indictment is fatally defective (1) because it violates Article 1, Section 10, of the Louisiana Constitution of 1921 "in that it fails to inform the defendants of the nature and cause of the accusations filed against them" and (2) because it "fails to describe the animal allegedly stolen sufficiently to support a plea of former jeopardy should defendants be charged anew, said indictment neither describing the animal in sufficient detail to identify same nor naming the alleged owner by which said animal could be identified".

The basis of all of these contentions is that the indictment is defective for *failure to allege the name of the owner of the animal which was the object of the alleged theft.*

■ It is well settled in the jurisprudence of this state that the failure to allege ownership in a particular person does not cause a larceny charge to be defective for lack of an element of the offense. In State v. Miller, 170 La. 51, 127 So. 361, this court said:

"[Even] Prior to the adoption of the Code of Criminal Procedure, it was held

that the ownership of a particular person *was not an essential ingredient of the crime of larceny,* which is simply the felonious taking and carrying away of the personal goods of another. * * *

"And again it was held that 'the ownership in a particular person of the property stolen is not of the essence of the crime of larceny, though it is of the essence of it that it should be alleged and proven to have been the property of another than the accused.' * * *

" * * *

"The word 'stole' as used in the statute was deemed by the compilers of [the] Code, and the lawmakers in adopting the Code, to be sufficient to include in its legal significance the element of ownership in a person other than the accused as well as the felonious intent which the taking of the property of another without his consent implies." [10] (Italics ours.) See 1 Marr's Criminal Jurisprudence, sec. 168, p. 273.

■ Ownership in a particular person is not an element of the crime of cattle theft denounced by R.S. 14:67.1.[11] This is reflected in the short form of indictment authorized by former R.S. 15:235 for charg-

ing this offense, which reads: "A. B. *committed the theft* of a certain animal, to wit: (description and number of animal or animals)." (Italics ours.)

The phrase "committed the theft", like the word "stole" as discussed in State v. Miller, supra, is "sufficient to include in its legal significance the element of ownership in a person other than the accused as well as the felonious intent which the taking of the property of another without his consent implies".

More recently, in State v. Blankenship, 231 La. 993, 93 So.2d 533, this court said: " * * * in cases of theft proof of ownership of the property stolen in the particular person alleged is unimportant, the state being required to show only that it belonged to someone other than the accused." To the same effect is State v. Babineaux, 146 La. 290, 83 So. 558, in which this court stated: " * * * Proof of ownership in the particular person alleged in the indictment to be the owner is not important in larceny. It suffices to show that the goods were owned by some one other than the thief, and that the thief feloniously took and carried them away. * * *"

10. The jurisprudence on this point has now been codified. See Cr.P. Art. 471, which reads: "Ownership, or the name of the owner of property, need not be alleged in the indictment, unless such ownership or name of the owner is essential to the offense."

11. R.S. 14:67.1 provides: "Theft of cattle, horses, mules, sheep, hogs, or goats is the misappropriation or taking of such cattle, horses, mules, sheep, hogs, or goats belonging to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of the cattle, horses, mules, sheep, hogs or goats is essential. * * *"

This court has already held that an indictment in the short form charging theft of cattle informs the accused of the nature and cause of the accusation against him. In State v. Roshto, 222 La. 185, 62 So.2d 268, an indictment in the short form which charged the defendant with the theft of "a certain animal, to-wit, one heifer", and which did not allege the name of the owner, was held to inform the accused of the nature and cause of the accusation against him.

In State v. Barksdale, 247 La. 198, 170 So. 2d 374, it was pointed out that the short form of indictment authorized by former R.S. 15:235 for certain well defined crimes has been uniformly upheld by this court as meeting the constitutional requirement that the accused must be informed of the nature and cause of the accusation against him, and that among these was the short form for theft of cattle, approved in State v. Roshto, supra.

Moreover, the indictment in the instant case informs the accused of the *nature* of the accusation against them—that is, that they are charged with committing the *theft* of a certain animal. Certainly the word "theft" has a well defined meaning which has been generally understood at least since the time of Moses. The indictment here also informs the accused of the *cause* of the accusation against them—that is, that they committed the *theft of the animal described in the indictment*.

■ In our view the failure to allege in the indictment the name of the owner of the stolen property does not make the description of the animal so faulty that the indictment will not support a plea of former jeopardy in the event a subsequent prosecution for the same offense is attempted.

The argument of these defendants rests on the false premise that animals cannot be described and identified except by ownership and that any description omitting ownership is insufficient. They may be described in this manner, but some other description may identify the animal equally well. Otherwise an indictment could never be drawn when the owner is unknown.

■ The indictment in the instant case, which gives the date of the offense and describes the animal, is sufficient to form a basis for a plea of former jeopardy in the event of an attempt to try these defendants again for the theft of this same animal. In the event of a subsequent indictment charging cattle theft on this same date, the accused may file a plea of former jeopardy and introduce any available evidence to show that the offense alleged in the second indictment is the same as that alleged in the first indictment under which they have already been tried and convicted. 22 C.J.S. Criminal Law § 444, at p. 1254. The test approved in this state is whether the evidence necessary to support the second indictment would have been sufficient to procure a

legal conviction on the first. State v. Keogh, 13 La.Ann. 243; State v. Vines, 34 La.Ann. 1079; State v. Williams, 45 La. Ann. 936, 12 So. 932; State v. Terry, 128 La. 680, 55 So. 15; State v. Roberts, 152 La. 283, 93 So. 95, 24 A.L.R. 1122; State v. Foster, 156 La. 891, 101 So. 255.

The trial court correctly maintained the indictment.

## BILL OF PARTICULARS

Prior to trial the defendants through counsel filed a motion for a bill of particulars seeking the following information:

"(a) The time of day, the place, and circumstances surrounding the alleged theft;

"(b) The method or system allegedly used by defendants to commit the alleged crime;

"(c) *The name of the complaining witness*, the name of the arresting officers, and circumstances under which the discovery of the alleged theft was made, reported, and investigated." (Italics ours.)

■■■ The State filed answer to this motion, setting forth date, time, and place of the charged theft, and stating that the two defendants killed the stolen animal, hauled it from the scene of the crime in Crowell Andrus's pickup truck to his home, and there butchered it and divided the meat between them. Counsel for the accused objected to the State's answer to the motion for a bill of particulars, the judge overruled the ob-

jection, and Bill No. 7 was reserved. Counsel argues here that the answer of the State was insufficient as it did not give him *"the name of the complaining witness"*.

■■■ We know of no law which provides that the defendant is entitled as a matter of right to the names of the State's witnesses. On the contrary, it is well settled in the jurisprudence that the State is not required to furnish the defendant with a list of its witnesses. State v. Kane, 36 La.Ann. 153; State ex rel. Wickliffe, District Attorney v. Blackman, Judge, 39 La.Ann. 847, 2 So. 588; State v. Daspit, 129 La. 752, 56 So. 661; State v. John, 142 La. 65, 76 So. 241, 5 A.L.R. 407; State v. Hadad, 142 La. 69, 76 So. 243; State v. Ferris, 142 La. 198, 76 So. 608.

■■■ It is equally well settled that the ruling of the trial judge denying an accused data sought in a motion for a bill of particulars will not be disturbed in the absence of a clear showing that the judge abused his discretion to the prejudice of the accused. Former R.S. 15:288; State v. Buhler, 132 La. 1065, 62 So. 145; State v. Gould, 155 La. 639, 99 So. 490; State v. Ezell, 189 La. 151, 179 So. 64; State v. Poe, 214 La. 606, 38 So.2d 359; State v. Mills, 229 La. 758, 86 So.2d 895, cert. den. 352 U.S. 834, 77 S.Ct. 51, 1 L.Ed.2d 53; State v. Butler, 229 La. 788, 86 So.2d 906; State v. Williams, 230 La. 1059, 89 So.2d 898; State v. Copling, 242 La. 199, 135 So.2d 271.

In the instant case defendants make no showing that the trial judge abused his discretion to their prejudice. In this court they imply in brief that in their motion for a bill of particulars they were seeking the name of the owner of the calf which they were charged with stealing. We have quoted above the data sought in their motion for a bill of particulars in order to show what they actually asked for, and this quoted material shows that they did not ask for the name of the owner but rather for the name of the "complaining witness". If they had wished to have the name of the owner, they could have explicitly said so. The complaining witness may possibly, but not necessarily, have been the owner, but there is no evidence before us to show that the complaining witness was in fact the owner. Furthermore, the trial judge considered the complaining witness to be someone other than the owner. He stated in his per curiam that the accused had all the information sought as a result of the hearing on their motion to suppress, and at this hearing the evidence disclosed the name of the person who notified the officers and the names of the officers making the investigation following his report, but did not disclose the name of the owner of the calf.

## QUESTIONS TO PROSPECTIVE JURORS

Bills Nos. 8, 9, 10, 11, and 12 were reserved when counsel for the accused was prevented, upon objection by the State, from asking certain questions of prospective jurors on voir dire examination. These questions were:

"Q. Mr. Miller, should the Judge instruct you that evidence seized by an illegal search cannot be considered in deciding the guilt or innocence of a person who is accused of a crime, would you have any conscientious scruples against disregarding completely any and all evidence which you find was illegally seized even though in your opinion that evidence creates grave suspicion that the accused is guilty?"

"Q. In other words, if the Judge instructs you that the verdict of attempt carries only one-half of the penalty of the crime charged, could you consider the maximum penalty of the crime as a factor in arriving at your verdict?"

"Q. In other words, if the theft of cattle carries a mandatory penitentiary sentence of a maximum of ten years, and attempt carries a penalty of a maximum of five years, could you in good conscience consider these differences in penalty in arriving at your verdict?"

We are convinced just from reading the questions that the trial judge properly sustained the State's objections to them. Under former R.S. 15:357 the purpose of examination of jurors on their voir dire is to ascertain their qualifications in the trial of the case, and the examination shall be limit-

ed to that purpose. The questions counsel desired to ask have no bearing upon the qualifications of the jurors to serve in this case. Moreover, as this court has said many times, the trial judge has a wide discretion in restricting voir dire examinations, and his rulings in this respect will not be disturbed except in cases of clear abuse. State v. Williams, 230 La. 1059, 89 So.2d 898, and cases cited. We do not find that there was any abuse of the discretion vested in the trial judge, to the prejudice of these accused.

## EVIDENCE OF TIRE MARKS

. A series of photographs was made of the tire tracks found at the place where the calf was killed, and photographs were also made of the tires of the accused Crowell Andrus's truck. A deputy sheriff, one of the State's witnesses, testified that the tire grips shown in the photographs made at the scene, as well as the grips in the tire tracks themselves, were the same as the grips on the tires on the defendant's truck. Counsel for defendants interprets the testimony of this witness to be that the tires of Crowell Andrus's pickup truck were the actual tires which made the tracks at the scene of the alleged theft. However, a reading of this witness's entire testimony indicates to us that what he meant was only that the grips of the tires were the same. Another officer, who had taken the photographs, testified that the pictures of the tire markings or tracks made at the scene and the pictures of the tires on defendant's truck showed the tire marks to be identical with respect to treads, grips, wear, etc.

To the admission of these photographs and the testimony of these two witnesses counsel objected on the ground that the witnesses were giving opinion evidence without having qualified as experts. These objections are embodied in Bills of Exception Nos. 21, 24, 25, and 26.

We view the testimony of these witnesses not as expressions of opinion but rather as statements of facts within their knowledge, and defendants' objection goes more to the weight of this evidence than to its admissibility. A very similar situation, with the same objection by the defense, arose in State v. Scott, 221 La. 643, 60 So.2d 71, where two deputy sheriffs were permitted to testify that certain car tracks were identical with the treads of the tires of defendant's car. In that case this court concluded that the testimony was founded on fact and was not an expression of an expert opinion.

## REMARKS OF THE ACCUSED

Bills Nos. 22 and 23 were taken during the trial when the court permitted officers of the law, over objection by the defense, to testify to remarks made by the accused, particularly a remark by Crowell Andrus, without the State's having laid the proper

foundation by showing that these remarks were free and voluntary. The remarks were made in the course of a conversation between the officers and the two accused shortly after the deputy sheriff had stopped the truck in which Crowell and Aaron Andrus were transporting the tub of meat. The defendants were placed under arrest for cattle theft after the remarks were made. The argument in this court is particularly directed to the admission in evidence of testimony by the officers that Crowell Andrus told them, in substance, that if they would keep their mouths shut, he would gladly pay for the calf if they knew to whom it belonged.

Both of the accused stated to the officers at this time that the meat came from a calf belonging to Crowell Andrus which they had killed in his pasture and butchered in his barn. Both testified in their own behalf at the trial and denied that they were guilty of the theft, asserting, as they had from their first conversation with the investigating officers, that the calf killed was the property of Crowell Andrus. They admitted that Crowell Andrus offered to pay for the calf and did not even suggest that this statement was not free and voluntary. Crowell Andrus testified that his reason for making the remark was his wish to avoid embarrassment. We interpret this to mean that he was willing to pay for the calf to avoid the embarrassment of being arrested for and charged with cattle theft.

Defendants take the position that the remark was an incriminatory statement, that under the jurisprudence of this court its admission was governed by the rules applicable to the admission of confessions, and that hence before the witnesses were permitted to repeat the remark, the State had to show affirmatively that it was freely and voluntarily given and not made under the influence of fear, duress, threats, inducements, promises, etc.

■■■ Crowell Andrus's offer to pay for the calf is not an admission of an inculpatory fact or an express admission showing the existence of criminal intent. We construe it to be an offer by the accused to compromise or settle the prosecution, and it is not such a remark as would require the State to lay the same foundation as is required for confessions. Wigmore gives the rule for admissibility of such an offer as follows:

"*In a criminal prosecution,* the accused's offer to pay money or otherwise to 'settle' the prosecution will be received against him, because that mode of stopping or obstructing the prosecution would be an unlawful act, and good policy could not encourage that mode of dealing with a criminal charge; hence such an offer is receivable for whatever inference may be drawn from it; subject, of course, to the accused's explanation. * * *" 4 Wigmore on Evidence, sec. 1061, at p. 31. See

also Collins v. State, 115 Wis. 596, 92 N.W. 266.

 In larceny cases evidence that the accused surrendered or restored the property to the owner or made payment for it may under appropriate circumstances negative felonious intent. 52 C.J.S. Larceny § 136 b(2) (d), p. 979. The same would be true of an offer to surrender the property or pay for it. On the other hand, an offer to settle or compromise may give rise to an inference of guilt. Therefore, when there is evidence of such an offer, the jury may draw from this evidence either an inference of innocence or an inference of guilt. Such evidence, like any other fact in the case, is for the jury to consider and weigh, drawing from this evidence whatever inference it may.

Courts in other states have had occasion to consider whether an offer to compromise or settle a prosecution should be treated like a confession, and have reached the conclusion that to treat it as such and charge the jury on the law of confessions would be prejudicial to the accused. The basis of this conclusion is that such an attitude by the court may induce the jury to think that the offer by the accused to settle was actually a confession of guilt and not just a fact from which it may or may not draw an inference of guilt. Lee v. State, 102 Ga. 221, 29 S.E. 264; Goodwin v. State, 114 Wis. 318, 90 N.W. 170; Collins v. State, supra; Michaels v. People, 208 Ill. 603,

70 N.E. 747; Willard v. State, 26 Tex.App. 126, 9 S.W. 358.

Counsel for defendants, as already stated, treats the remark as an incriminatory admission, and argues that the foundation required for admitting confessions into evidence is also required for admitting this remark. As we have pointed out, the statement is an offer to compromise or settle the prosecution, and the predicate required for admitting a confession is not necessary for its admission. Even under the view taken by counsel for defendants, however, we do not think that the predicate required for admitting a confession into evidence was required for the admission of this statement.

In 1899, more than 68 years ago, this court decided State v. Picton, 51 La.Ann. 624, 25 So. 375, a landmark case in which the court discussed the distinction between admissions of inculpatory facts and confessions of guilt, stating:

 "A confession is limited in its precise scope and meaning to the criminal act itself. It does not apply to acknowledgments of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt. These are criminating admissions, rather than confessions. * * *

 "There is a broad distinction between the mere admission of inculpatory *facts* and a confession of guilt. Where a

person only admits certain facts from which the jury may or may not infer guilt, there is no confession. * * *"

In that case the court approved the view that "the rule of inadmissibility of a confession procured by threat or promise, does not apply to admissions *not involving the existence of a criminal intent*". (Italics ours.)

The principles of law enunciated in that decision were codified in our 1928 Code of Criminal Procedure in Articles 449, 451, and 454, and carried into the Revised Statutes of 1950, Title 15, secs. 449, 451, and 454, thus:

"Sec. 449. The term 'admission' is applied to those matters of fact which do not involve criminal intent; the term 'confession' is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt."

"Sec. 451. Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."

"Sec. 454. The rule that a confession produced by threat or promise is inadmissible in evidence does not apply to admissions *not involving the existence of a criminal intent*." (Italics ours.)

An analysis of these provisions discloses that incriminating statements by the accused

are placed in three categories: The first is the confession properly speaking, a term which is applied only to an admission of guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgment of facts merely tending to establish guilt but not involving the existence of criminal intent.

When the admission does not involve the existence of criminal intent, under R.S. 15:454 its admission into evidence is not governed by the rules applicable to a confession. For example, in State v. Campbell, 219 La. 1040, 55 So.2d 238, the court found that the statement of the accused was merely an admission of facts tending to establish his guilt and not an admission involving criminal intent, and accordingly held that it was properly admitted without the predicate required for admitting a confession.

On the other hand, where the admission does disclose the existence of criminal intent, the same predicate must be laid as is required for admitting a confession into evidence. For instance, in State v. Robinson, 215 La. 974, 41 So.2d 848, this court held that the statement of the accused, although not a confession, revealed the existence of criminal intent, and that for it to be admissible the same predicate required for admitting a confession into evidence had to be laid.

We must concede, however, that there are a number of decisions of this court in which the distinction set out in the 1928 Code between admissions involving criminal intent and those merely stating facts tending to establish guilt was apparently overlooked, and which held incorrectly that the foundation had to be laid for the admission of *any* inculpatory statement.[12]

The provisions of the 1928 Code, R.S. 15:449, 451, and 454, quoted above, which are in the *Evidence* chapter of Title 15 of the 1950 Revised Statutes, have not been repealed or replaced by the new Code of Criminal Procedure which became effective on January 1, 1967, and they remain the law. We note, however, that certain articles of the new Code of Criminal Procedure in other areas have made certain rules applicable to confessions applicable also to "inculpatory statements" without drawing the distinction between inculpatory statements or admissions which show criminal intent and those which show facts tending to establish guilt but do not reveal the existence of criminal intent. For example, see Arts. 703 and 768. For this reason it appears to us that some confusion or conflict may possibly result in dealing with inculpatory statements. This, however, is a matter which addresses itself to the legislative department and not to the courts.

In the instant case, even under the view taken by counsel that the statement of the accused is to be considered inculpatory, this remark was not an express admission of guilt or of facts showing criminal intent; and it was therefore properly admitted without the foundation necessary for admitting a confession.

## REQUESTED SPECIAL CHARGES

Counsel for the accused submitted to the court 19 special charges with the request that they be read to the jury. The court refused to give any of these charges, stating that most of them were included in the general charge and that those not included were not proper charges for the jury. By this the judge obviously meant that the requested special charges either were covered by his general charge or were not wholly correct and wholly pertinent. Former R.S. 15:390. To the refusal to give these special charges counsel for the accused excepted and reserved Bill of Exception No. 29.

In brief filed in this court counsel now urges error only in regard to the refusal to give three of these requested special charges, Nos. 16, 17, and 19.

Neither at the time the objection was made to the judge's refusal to give these special charges nor in the bill of exception itself is there any *statement of facts* which would show error in the refusal to charge as

---

12. See, for instance, State v. Palmer, 232 La. 468, 94 So.2d 439; State v. Domino, 234 La. 950, 102 So.2d 227.

requested. Former R.S. 15:391 provides: "Every objection * * * to a refusal to charge as requested * * * shall be by means of a bill of exceptions reserved before the jury shall have retired to deliberate upon their verdict, and the bill of exceptions shall be accompanied by such a statement of facts as shall show the error * * * in the refusal to charge as requested."

■ In State v. Pearson, 224 La. 393, 69 So.2d 512, it was pointed out that the purpose of this law is to require counsel to call the trial judge's attention to the error complained of so as to afford the judge an opportunity to correct it, and that the mere statement that the ruling is incorrect is not sufficient. In the present case no reason was advanced by counsel either at the time the objection was made or in the bill itself as to why it was error for the judge to refuse to give the charges or how the accused were prejudiced by his refusal. Under circumstances such as these it has been held that appellants are not entitled to have this court review the judge's refusal to give requested special charges. State. v. Melerine, 236 La. 881, 109 So.2d 454. However, having concluded that there is no merit in Bill of Exception No. 29 regarding the refusal of the judge to give the three requested special charges, we shall briefly discuss each.

■ Requested Special Charge No. 16 reads: "In arriving at your verdict you may consider that the verdict of 'attempted theft' of cattle carries a maximum penalty of only one-half as great as the maximum penalty under the verdict of 'guilty as charged'."

■ This charge was not pertinent and hence was correctly refused. The imposition of sentence or the fixing of punishment (except in capital cases) is solely for the trial judge and is not a function of the jury. State v. Green, 244 La. 80, 106, 150 So.2d 571.

Requested Special Charge No. 17 reads: "Before there can be a lawful conviction of a crime, the corpus delicti, that is, the fact that the crime charged has in fact been committed by someone, must be proved."

■ It is well settled that to obtain a legal conviction in a criminal case the State must prove the corpus delicti, or the fact that a crime has been committed. State v. Brown, 236 La. 562, 108 So.2d 233. In the crime of larceny the corpus delicti is the fact that a theft was committed. State v. Dunn, 140 La. 385, 73 So. 240. The accused in the instant case were charged in the indictment with having committed the theft of a certain described animal. The judge in his general instructions to the jury charged that it was incumbent on the State to prove the offense charged or legally included in the indictment to the satisfaction of the jury beyond a reasonable doubt. This was a charge to the jury that the State

had to prove the corpus delicti, that is, that the offense of theft had been committed. Therefore Requested Special Charge No. 17 was covered by the judge's general charge and was properly refused.

▬▬ Requested Special Charge No. 19 reads: "Should you find that any statement made by the defendants after their arrest *constituted an admission of guilt,* such statement or statements are to be entirely disregarded unless you find that the statements were made free and voluntary and after defendants had been warned that any statements made by them could be used against them and were apprised of their constitutional rights." (Italics ours.)

Under R.S. 15:449 an admission of guilt is a confession. Since there was in fact no confession in this case, a charge regarding confessions is inapplicable and not pertinent, and was correctly refused by the trial judge. Former R.S. 15:390. The judge properly refused to give this charge for the additional reason that it is not a correct statement of the law.[13]

## MOTION FOR A NEW TRIAL

The bill of exception reserved to the overruling of the motion for a new trial offers nothing further for our review since it merely reiterates contentions previously raised, which we have already discussed and disposed of.

For the reasons assigned the convictions and sentences are affirmed.

FOURNET, C. J., dissents.

FOURNET, Chief Justice (dissenting as to the holding under Bill of Exceptions No. 5).

The Louisiana constitution of 1921 provides that "[p]rosecution shall be by indictment or information" (Section 9 of Article I), and that "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him * * *." Section 10 of Article I. Moreover, the indictment or information must be sufficient to insure that no one "be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial." Section 9 of Article I.

Under these fundamental and basic principles upon which all of our criminal justice rests the accused, as Wharton points out in his work on Criminal Law and Procedure, *"has a substantive right to be informed by the indictment or information in simple, understandable language of the*

---

13. The trial of this case was begun on March 7, 1966, and therefore the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is not applicable. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, in which it was held that the guidelines set out in Miranda were available only to persons whose trials had not begun as of June 13, 1966.

*crime he is charged with and the acts constituting the crime, in sufficient detail to enable him to prepare his defense and to be protected in the event of double jeopardy."* Volume 4, page 557, Section 1762. (The emphasis has been supplied.)

The jurisprudence under these constitutional guarantees establishes that the test of the sufficiency of a criminal charge is not whether it might possibly have been made more certain, but whether it sufficiently apprises the defendant of what he must be prepared to meet, and, in the event of a subsequent proceeding against him for a similar offense, will sustain a plea of former acquittal or conviction. See, United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Potter, C.C., 56 F. 83; State v. Varnado, on rehearing, 208 La. 319, 23 So.2d 106; State v. Straughan, 229 La. 1036, 87 So.2d 523; 4 Wharton's Criminal Law and Procedure, 551, Sections 1760, 1762, and the authorities cited in these decisions and textbook.

The Louisiana legislature, in adopting the short forms prescribed for charging certain well known crimes as set out in Article 235 of the Code of Criminal Procedure (now

R.S. 15:235) did so *not* with the view of in any way abrogating these fundamental and basic guarantees, but merely to conform with the general trend in the courts and among men of law to relax highly technical and arbitrary rules of the common law that had grown up around the framing and construction of indictments and informations by eliminating much of the tautology and prolixity that was unnecessary for the protection of an accused's constitutional rights. And while these forms in Article 235 are important guides in drawing up a criminal charge, they were never intended to be used or interpreted as dispensing with allegations sufficient to meet this two-fold constitutional test.

Had this court felt the short forms reflected such an intention on the part of the legislature, it would have stricken them down as basically and fundamentally defective. Instead, in all instances where the short forms were attacked, they have been upheld, *provided the charge as drafted in the short form contained sufficient detail to apprise the defendant of the nature and cause of the accusation, and also to serve as a basis for a plea of double jeopardy.*[1]

1. See, State v. Eisenhardt, 185 La. 308, 169 So. 417, where the charge was that the accused "murdered Vincent Bologna." In State v. Brooks, 173 La. 9, 136 So. 71, the defendant was accused of embezzling "a check payable to the First Baptist Church." In State v. Ducre, 173 La. 438, 137 So. 745, it was charged the defendant forged "a certain instrument purporting to be the will and testament of one Drauzin Ducre, bearing date March 13, 1928." The accused in State v. Young, 206 La. 202, 19 So.2d 48, was charged with battery with a dangerous weapon upon W. E. Cart. In State v. Pete, 206 La. 1078, 20 So.2d 368, the defendant was charged with "theft of an automobile * * * the property of Gordons Drug Store, Inc." In State v. Ward, 208 La. 56, 22 So.2d 740, it was charged the

This is emphasized by the fact that this court declared unconstitutional the amendment to Article 235 contained in Act No. 223 of 1944, which stipulated that "in all cases of crime included in the Criminal Code but not covered by the short forms hereinbefore set forth, it shall be sufficient to charge the defendant by using the name and article number of the offense committed." In striking down this provision in State v. Straughan, 229 La. 1036, 87 So.2d 523, this court held it deprived the accused of the basic constitutional rights set forth in the 5th and 6th amendments to the federal constitution and Sections 9 and 10 of Article I of our constitution. The court further held that inasmuch as the criminal charge was, itself, fatally defective, it could not be cured by the state's answer to the motion for a bill of particulars.

In so holding, we stated: "* * * *there can be no question but that constitutional provisions of the state are supreme, transcending any legislative enactment—or judicial pronouncement* or executive act for that matter—*and in prescribing the form of charge and the procedure in criminal cases a legislature can never, either directly or indirectly, endanger any of the safeguards and protections with which the rights of the individual have been surrounded in that instrument, or, by circumvention, in any*

manner trench upon its guarantees." Continuing, the court observed: "* * * it is the duty of the court to interpret legislative enactments and to decide cases in the light of these guarantees, and it may not, in the name of expediency or in the wake of changing modern trends, permit the legislative body to unlawfully override the mandates of the constitution where these are plain and unambiguous." (The emphasis has been supplied.)

The amendment to Article 235 under consideration in the instant case was adopted in 1950 to conform with a change made at the suggestion of the drafters of the Revised Statutes adopted that year by adding the short form covering the theft of animals, and which provides that the theft of cattle, horses, mules, sheep, hogs, or goats may be charged as follows: "A. B. committed the theft of a certain animal, to wit, (description and number of animal or animals)." (The emphasis has been supplied.)

The indictment in the instant case charges the defendants with "the theft of a certain animal, to wit: One red and white calf, weighing approximately 275 pounds." It is defense counsel's contention this indictment is fatally defective in that it is too vague and indefinite to inform defendants of the nature and cause of the accusation against them, and also to serve as the basis for a

defendant "negligently killed one Wilbert Thomas." In State v. Wright, 215 La. 529, 41 So.2d 76, it was charged defendant burglarized a building "at 316 Strand

Street, Shreveport, Louisiana, belonging to Tri-State Wholesale Produce Company, Inc."

▬▬▬▬▬

plea of double jeopardy, because it failed to properly describe the animal purportedly stolen by specifying the owner thereof or giving any reason for not doing so, i. e., that the owner was unknown; consequently, there is nothing to identify or particularize the crime here charged from the theft of any other hundreds of red and white calves weighing approximately 275 pounds roaming the ranges and pastures in the vicinity.

The gravamen of the offense denounced in the Criminal Code is the "Theft of cattle * * * *belonging to another*" with the intent "to deprive *the other* permanently of the cattle * * *." Article 67.1, now R.S. 14:67.1. In the light of this definition and the constitutional guarantees for the protection of an accused, I am of the opinion the defense objection to the sufficiency of the indictment is a valid one. To illustrate, suppose the defendants in the instant case had pleaded guilty to the charge as drawn and had, subsequent thereto, been charged by a similar indictment with the theft on the same day of a red and white calf weighing 275 pounds and to this indictment pleaded former jeopardy on the basis of the first charge, only to learn that the plea of guilty theretofore given was not to the theft of the

red and white calf belonging to Justice of the Peace Everett Kelly, but, instead, to the theft of a red and white calf belonging to "John Doe." There is absolutely nothing in the charge as drawn to protect the defendants in such a case from double jeopardy. (The emphasis has been supplied.)

My view in this respect is fortified by the fact that an exhaustive research of all authorities in the various states on this subject reveals it conforms to the universal jurisprudence,[2] that is, that in charging the theft or larceny of an animal, *the name of the owner is a necessary part of the description* in order that the specific crime may be so identified the defendant can properly prepare his defense and use the charge as a basis for a plea of double jeopardy to prevent further prosecution for the theft of the same animal, and, further, to enable the jury to decide whether the animal proved to have been stolen was actually the same one upon which the charge was founded. The particular ownership of the animal is charged in the indictment not to give character to the *act of taking,* but, instead, *to describe the particular taking* (offense); consequently, although ownership in any particular person (Joe Bloe instead of John

2. Instances where the owner's name is not given in charges of animal theft are so rare in the other jurisdictions as to be almost nonexistent. The only two found are as follows: People v. Shaw, 240 N.Y.S.2d 56, 38 Misc.2d 439, where the case was summarily dismissed because the owner's name had not been given in the charge. In State v. Shroyer, 49 N.M. 196, 160 P.2d 444, where defendant objected to the charge for insufficiency because the owner's name was not given, the charge was amended to disclose the owner before going to trial.

Doe) is not a necessary element of the crime of taking (theft), the allegation of ownership is a matter of description of the crime, and, as such, is necessary for a valid charge. As stated in the landmark case of People v. Bogdanoff, 254 N.Y. 16, 171 N.E. 890, 896, 69 A.L.R. 1378, "There must in every case be *identity of accusation* * * *. It is the duty of the district attorney to formulate that description with such precision that it cannot be successfully challenged." (The emphasis has been supplied.)

The necessity for including the *name of the owner* of the stolen animal as a part of the description of that animal, in order that the particular accusation or theft may be identified within constitutional restrictions, is emphasized by the fact that under the jurisprudence of this state at the time this short form was provided for by the 1950 legislature, and, indeed, under the universal jurisprudence of this country and at common law, the *markings and color of the animal itself did not form any part of its description.* It was sufficient to designate the stolen animal by nothing more than its *species* and/or generally understood *popular or common name, provided the name of its owner was given.* For this reason charges were upheld in this state as sufficient when the stolen animal *described as the property of a named individual*[3] was merely designated as "one mule," "one hog," "one beef," "one yearling," "one bull," "one heifer," "three hogs," and "one head of cattle." See, respectively, State v. King, 31 La.Ann. 179; State v. Carter, 33 La. Ann. 1214; State v. Baden, 42 La.Ann. 295, 7 So. 582; State v. Majors, 131 La. 466, 59 So. 904; State v. Hawthorn, 134 La. 979, 64 So. 873; State v. Papillon, 139 La. 791, 72 So.2d 249; State v. Cain, 175 La. 811, 144 So.2d 504; and the very recent

---

3. In State v. Charlot, 8 Rob. 529, the indictment charged the theft of three cows "the *property of Herbert Doucet*," and the defendant in State v. King, 31 La. Ann. 179, was charged with the theft of "one mule valued at seventy dollars, the *property of John M. DeFee*." It was charged in State v. Everage, 33 La.Ann. 120, that the accused was guilty of larceny of "one hog * * * the *property of N. Fuller and C. A. Presley*;" and in State v. Carter, 33 La.Ann. 1214, larceny of one hog, *property of Alice McKinney*." Larceny of "one beef, of the value of fifteen dollars, of the *property of A. T. Broussard*" was charged in State v. Baden, 42 La.Ann. 295, 7 So. 582. The charge in State v. Stelly, 48 La.Ann. 1478, 21 So. 89, was larceny "of a hog, the *property of Isaac Rider*." In State v. Polite Jim, 48 La.Ann. 267, 19 So. 145, the defendant was charged with stealing "four head of cattle * * * *chattels of one Dorsin Prudhomme*." Larceny of "one yearling, the *property of John H. Houston*," was charged in State v. Majors, 131 La. 466, 59 So. 904; stealing "one 'bull' * * * the *property of W. T. Smith*" was charged in State v. Hawthorn, 134 La. 979, 64 So. 873; stealing "one heifer" *chattel "of Achille Gaubert*" was charged in State v. Papillon, 139 La. 791, 72 So.2d 249; and stealing "three hogs of the *property of Clarence S. Holt*," was charged in State v. Cain, 175 La. 811, 144 So. 504. (The emphasis has been supplied.)

case of State v. Odom, 247 La. 62, 169 So. 2d 909.

The basis for this Louisiana jurisprudence, and, indeed, for all of the jurisprudence throughout the country, is the following comment on the common law of England as set out by Bishop in his work on criminal law: *"Assuming * * * ownership to be duly alleged,* the following expressions descriptive of the thing are severally sufficient: 'one sheep,' 'a horse,' 'one certain hog,' 'one cow,' etc." 2 Bishop, Section 700. See, State v. Carter, 33 La. Ann. 1214. (The emphasis has been supplied.)

The underlying reason, as indicated in some of the cases, is obvious. With herds of animals identical in species and similar in coloring and marking roaming ranges and unfenced areas, *it is practically impossible to particularize the animal by markings and coloring with the necessary particularity to permit it to be identified standing alone,* as, for example, sheep that are, for all intents and purposes, identical and without visible distinguishing marks. Even if the animal is branded, an owner may have hundreds of animals similar or identical in coloring and marking carrying the same brand. Obviously, therefore, a description of the animal standing alone in an accusation, without the name of the owner, as in the case at bar, would render it so vague and indefinite it could never withstand the two-fold constitutional tests of sufficiency.

The only exception to this rule in our jurisprudence is State v. Roshto, 222 La. 185, 62 So.2d 268.[4] The defendant in that case was charged with the theft of "a certain animal, to-wit, *one heifer.*" This court in holding such a charge was sufficient relied on our decision in State v. Pete, 206 La. 1078, 20 So.2d 368, an examination of which readily discloses it does not support such a conclusion since in the Pete case the accused was charged with "the theft of an automobile * * * *property of Gordons Drug Store, Inc.*" Moreover, in the Roshto case, the court gave no consideration whatever to the sufficiency of the charge as a basis for a good plea of former jeopardy, despite the fact defense counsel strenuously urged this, the decision resting on the mere assertion that under the holding State v. Pete the charge was sufficient to inform the accused of the nature and cause of the accusation against him. *Its sufficiency to sustain a plea of former jeopardy was not even mentioned.* (The emphasis has been supplied.)

4.　Despite the holding in the Roshto case, subsequent cases coming before this court on the subject did not follow it. In State v. Ganey, 246 La. 986, 169 So.2d 73, the charge was theft of "a cow" *belonging to Alvin Edwards.* In State v. Odom, 247 La. 62, 169 So.2d 909, the charge was the taking of "one head of cattle, *property of Sidney Guillory.*" (The emphasis has been supplied.)

The decision in the Roshto case might be persuasive in the instant case were it not unsound, and, indeed, in the very teeth of the constitutional rights guaranteed an accused.

For these reasons I respectfully dissent from the holding of the majority sustaining the ruling of the trial judge that forms the basis of Bill of Exceptions No. 5, which holds the indictment in the instant case meets constitutional tests of sufficiency.