COLLINS, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 24—November 11, 1902.*

*Criminal law: Larceny: Joint trial: Evidence: Statement by one defendant: Intoxication: Instructions to jury.*

1. On a trial for larceny, evidence that defendant, while on bail, went to a police officer and expressed a desire to have the prosecution settled, saying: "I will give this man his money back. I am getting tired of this. It was a joke, and you can settle it,"—was admissible as tending to show guilt.
2. A charge relative to such evidence, to the effect that a statement made by any one of the several defendants in the absence of the others should only be considered as touching the guilt or innocence of the person making the statement, was not objectionable as characterizing the statement as a confession or admission of guilt.
3. Upon the trial of three persons jointly for larceny alleged to have been committed while they and the complaining witness were carousing together, a statement made by one of the defendants in which, although it was mainly exculpatory of herself, she admitted her presence and participation in the joint orgy and that she received and had in her possession a part of the stolen property, was admissible,—the jury being instructed that they must not consider it as bearing upon the guilt or innocence of either of the other defendants.
4. A conversation between one defendant and a police officer, including statements made by him in response to interrogatories in which the officer stated to him the substance of declarations already made by his codefendants, was admissible, as against his objection that it contained statements of the other defendants not shown to have been voluntary and free.
5. On a trial for larceny, there being evidence tending to show that defendants were intoxicated at the time, it was error for the court not to give to the jury, as requested, a clear and definite

direction to acquit if they found defendants were so intoxicated as not to have capacity to form the necessary criminal intent, or if they had a reasonable doubt whether defendants had such capacity. *Bernhardt v. State*, 82 Wis. 23, criticised and distinguished.

Error to review a judgment of the municipal court of Milwaukee county: A. C. Brazee, Judge. *Reversed*.

Upon a joint trial of the plaintiff in error, Pauline Palmer, and Marie Gordon, the two former were convicted of larceny from the person of Charles Love, committed in a saloon in Milwaukee on January 29, 1902, at a time when the four were carousing together; it being claimed, substantially, that said Love, either accidentally or by reason of interference of *Collins*, fell to the floor, and, as the latter pretended to assist him to arise, there was taken from him a pocketbook containing a considerable sum of money and certain rings, and that the money was retained by *Collins*, and the rings divided between the two women. All three of the accused had made statements to the chief of police, in the main denying complicity, but admitting certain facts constituting part of the complaining witness's narrative. The judgment and sentence against him the plaintiff in error brings up on writ of error.

*A. C. Umbreit*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General;* a separate brief by *W. H. Bennett*, district attorney, and *Edward T. Fairchild*, assistant district attorney, of counsel; and oral argument by *R. F. Hamilton*, second assistant attorney general.

Dodge, J. The first assignment of error is predicated upon the admission of the testimony of a police officer that, some time after the preliminary examination, *Collins*, being on bail, came to him and expressed a desire to have the prosecution settled, saying: "I will give this man his money back. I am getting tired of this. It was a joke, and you can settle it,"—and other remarks of the same tendency. Upon motion

to strike out this testimony, the court, overruling it, said: "The jury will remember the former instruction, and consider the testimony of any one of the defendants given in the absence of the others is only to be considered as touching the guilt or innocence of the person so making the statement." We can discover no merit in this assignment of error. Courts have uniformly held that an offer to settle a criminal prosecution is admissible in evidence, and this holding can be based only upon the foundation that there is a possible inference of guilt to be drawn therefrom, and that the jury are the proper forum, after the transaction is laid before them in evidence, to decide whether any such inference shall be drawn. *State v. Rodrigues,* 45 La. Ann. 1040, 13 South. 802; *Barr v. People,* 113 Ill. 471; *McMath v. State,* 55 Ga. 303; *State v. DeBerry,* 92 N. C. 800. The language in the present instance was certainly capable of supporting such an inference. The offer to give the money back, and the statement that the transaction had been a joke, might carry the implication that the money had in fact been taken from the complaining witness.

But the attorney for the plaintiff in error especially complains of the ruling above quoted, apparently, as if the court therein had characterized the statements testified to as a confession or an admission of guilt. Such improper characterization of statements made by an accused was discussed in *Goodwin v. State,* 114 Wis. 318, 90 N. W. 170. In the ruling of the court now under consideration, however, nothing of the sort appears. He simply reiterated the caution that any testimony given (presumably meaning statements made) by one of the accused in the absence of the others could not be considered against such others. He did not characterize the testimony or the statements as either confession or admission. We fail to see how he could have more carefully guarded the accused from any intimation of his own opinion as to the effect or significance of the transaction given in evidence.

2. The statement made by the codefendant Marie Gordon, and taken by a stenographer, was offered in evidence, and received by the court under the instruction that the jury must not consider it as bearing upon the guilt or innocence of either of the other defendants. It is said that the statement was entirely exculpatory as to Marie Gordon, and consisted wholly of incrimination of the other two defendants; therefore it could have no admissibility as to her, and its only purpose must have been to improperly affect the jury in considering the guilt or innocence of her codefendants. We appreciate the peril to a defendant, tried jointly with others, from statements made out of court and out of his presence by the other accused, but upon joint trials there is no complete escape from this practical peril. Such statements, when voluntary and containing any element of admission, must be received as against the defendant making them, and the utmost protection which the courts or the law can give to the codefendant consists in the direction to the jury not to consider such statements as to him. That direction was carefully given in this case, and the reception of the Gordon woman's statement was one of the incidents of a joint trial. It is not true, as counsel contend, that it contained no element of admission on her part. It did admit her presence at the time of the alleged larceny, her participation in the joint orgy then in progress, and the fact that she received and had in her possession certain of the stolen property. We think the statement was properly admissible as to her, and that the court rightly took the only step in his power to render it nonprejudicial to the plaintiff in error, and that no error was committed, as against him, in its admission.

3. Error is assigned upon the admission in evidence of a stenographer's testimony as to a statement made by the plaintiff in error himself to the chief of police in response to interrogatories by the latter, in the course of which interrogatories there was stated to him the general substance of dec-

larations that had already been made by the two women. Were the statements objected to as not having been voluntarily made by the plaintiff in error, but as the result of at least implied coercion, threat, or promise, its similarity to that held inadmissible in the recent case of *Bram v. U. S.* 168 U. S. 532, 18 Sup. Ct. 183, would demand careful consideration; but an examination of the record discloses that such objection was not made. When the statement was offered, defendant's counsel objected "for the reason that it contains statements made by one of the other codefendants, which statement has not as yet been properly proven as having been voluntary and free; but as to the rest of it there is no objection." Thus the objection to the reception of his statement or declaration on the ground that it was not voluntarily made by *Collins* was expressly disclaimed. The objection in fact urged to it, that, in the conversation about to be given, the chief of police had quoted to *Collins* statements of the other defendants, without showing that such statements had been voluntarily made to him, could not of itself render his statement inadmissible. If the accused had consented that the conversation between him and the chief of police might be given at all, the whole thereof was admissible,—indeed, was necessary, in order to make his own answers intelligible; and it was wholly immaterial whether the statements from others quoted by the chief of police had been made voluntarily or involuntarily. They were parts of the conversation with this defendant, and were equally the basis of *Collins's* replies. This error, also, must be overruled.

4. The plaintiff in error assigns error upon the instruction of the court with reference to intoxication as bearing upon the criminal intent. His counsel requested (and to the refusal thereof excepted) an instruction in the following words:

"The intent just referred to and explained can exist only when the party is competent to form an intent, and purposely takes the property alleged to have been stolen. Testimony has

been received in this case tending to show that these defend-
ants were intoxicated at the time of the alleged larceny. While
mere intoxication is not an excuse for crime, nor a defense to
a criminal charge, yet when a specific intent is necessary, as
in the case of larceny, the question of intoxication becomes
important, in determining whether the person charged was or
was not in such a state of mind as to be able to form such
specific intent.   As already explained, the mere taking of
property of another does not constitute larceny, unless the in-
tent permanently to deprive the owner thereof existed at the
time of the taking.   You may therefore consider whether or
not the defendants, or either of them, were so intoxicated at
the time of the alleged larceny as to be incapable of forming
the felonious intent which is a necessary element of the crime.
If you find that they were, or if you have a reasonable doubt
as to whether they were or not, then they are not guilty of the
charge, and must be acquitted."

The court gave the following instruction on that subject:

"It is claimed on the part of the defense, and there has
been some testimony offered tending to show, that the de-
fendants at the time and place charged were intoxicated, and
on this question of intoxication you are instructed that volun-
tary intoxication is no defense to a crime actually committed;
that is, one cannot of his own free will become intoxicated,
and successfully plead intoxication in court as a defense to a
crime committed when in that condition.   But in case where
the intent forms a portion of the offense necessary to be found
for the jury, intoxication may be taken into consideration by
the jury.  'If you should find from the evidence and circum-
stances surrounding the alleged commission of the offense
that the defendants, or either of them, at the time and place
charged, were in such a condition, from the use of spirituous
liquors, that they, or either of them, were incapable of form-
ing an intent to deprive the complaining witness, Love, of his
property, and of his ownership of the same, then you may
consider the question of intoxication.   The question simply is,
Were the defendants, or either of them, at the time,—before
you consider the question of intoxication at all,—were they,
or either of them, at the time in such a condition mentally as
to be incapable of forming the intent feloniously to deprive
the complaining witness, Love, of his property, and his owner-

ship of the same. But, gentlemen, you will remember that every person who is sober enough to plan and execute a crime is, in law, sober enough to be responsible for his acts.' "

The instruction requested is an accurate and clear statement of the law upon the subject, and should have been given. Its refusal is error, unless the subject is properly and adequately covered by the charge as in fact given. An examination of that charge, however, discloses that it wholly failed to inform the jury of the effect upon their verdict of a finding of such degree of intoxication as to render the accused incapable of a criminal intent. If they found such degree of intoxication, or, indeed, if the evidence raised a reasonable doubt whether it did not exist, their duty was to acquit, and the court was requested to so instruct. That he did not do. It will be noticed that his only instruction to the jury is that, if they find there was a condition such as to render him incapable of forming the criminal intent, then they "may consider the question of intoxication." This is not enough. It did not give to the accused the benefit of the true rule of law on the subject. We are aware that the instruction given in this case on the subject of intoxication is substantially identical with that considered in *Bernhardt v. State,* 82 Wis. 23, 51 N. W. 1009, as appears from the briefs filed in that case, though not fully in the opinion, and that it was there said to be accurate. We think the remark unfortunate, as applied to the whole instruction, which is very confusing; apparently directing the jury that they must find mental incapacity from intoxication before they can consider at all whether intoxication existed. The particular defect which we now point out, however, was not there urged, and the omission was not emphasized by a correct and accurate request for instruction that acquittal must follow the incapacity to entertain criminal intent. In the *Bernhardt Case* the matter under discussion was rather the definition of the degree and mental effect of the intoxication, and in that respect, doubtless, the

instruction given by the court was more nearly accurate than that requested by the counsel. We cannot avoid the conclusion that in the instant case error was committed, prejudicial to the plaintiff in error, in failing to embody, when requested, the clear and definite direction to acquit in case the jury found incapacity to form the criminal intent by reason of intoxication, or entertained reasonable doubt of the existence of such incapacity.

*By the Court.*—Judgment reversed, and cause remanded for a. new trial. The warden of the state prison will deliver the plaintiff in error, *Stephen Collins,* to the sheriff of Milwaukee county, who is directed to keep the said *Collins* in his custody until he is duly discharged therefrom or until otherwise ordered according to law.