STATE of Wisconsin, Plaintiff-Respondent,

v.

Keith E. PISCHKE, Defendant-Appellant.†

Court of Appeals

*No. 95–0183–CR. Submitted on briefs October 20, 1995.—Decided November 22, 1995.*

(Also reported in 542 N.W.2d 202.)

†Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Mark D. Richards* of *Richards & Reisterer, S.C.* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J. The issue we deem worthy of immediate mention has to do with § 904.10, STATS., prohibiting evidence of offers to plead guilty or no contest. The statute applies, in pertinent part, to offers made to a district attorney. Here, Keith E. Pischke claims that his offer to plead was directed to the district attorney and thus comes within the purview of the statute. The trial court found, however, that the offer to plead in this case was made to a police officer and not the the prosecutor. We agree. And, as did the trial court, we hold that the statute does not prohibit admission of this type of evidence. We also affirm two Sixth Amendment issues relating to statements Pischke gage to two police officers after he had been taken into custody and had invoked his right to counsel.

On February 19, 1993, Mt. Pleasant police officers stopped Randy Biedenbender and Pischke, his passenger, because of a noisy muffler. After identifying both men, the officers arrested Biedenbender on outstanding warrants. Although a search of the van revealed metal snips, bolt cutters and various pneumatic tools, the officers apparently were satisfied with the explanation that these instruments belonged to Biedenbender and were used in his line of work. The officers thus allowed Pischke to leave the scene in the van, but they took down his address and recorded the serial numbers of the power equipment.

The next day, these officers learned that a burglary had been reported at a manufacturing plant in Mt. Pleasant. Several power tools were missing with serial numbers matching those found in Biedenbender's van. Pischke was subsequently arrested and taken into custody. He asked for a lawyer after being given *Miranda* warnings.

Soon thereafter, while he was being held in the Racine county jail on these Mt. Pleasant charges, Detective McManaman of the Cudahy (Milwaukee county) police met personally with Pischke to discuss a burglary that occurred in January. McManaman also made a second trip to Racine county to meet with Pischke and talk about the crime in Cudahy.

Pischke eventually requested his brother to contact McManaman to arrange for a third visit. The brother persuaded McManaman to take another trip to Racine county on April 23, 1993. This time Pischke asked McManaman to take him to the crime scene in Cudahy. There he showed McManaman specific details about that burglary. Pischke then gave a statement admitting his involvement with hopes that the police would explain to the various district attorneys how he cooperated in the investigation.

Before his first visit, McManaman was informed that Pischke had retained a lawyer to handle the Mt. Pleasant charges. McManaman still gave Pischke the *Miranda* warnings because of the possible charges in Cudahy. However, Pischke declined representation.

In addition, Pischke had contact with Officer Chaussee of the Mt. Pleasant police while he awaited trial in the Racine county jail. Chaussee was not investigating either case; rather, he came only to deliver a message from Pischke's sister. She had recently moved and was concerned that Pischke did not have her new

number. Chaussee simply went to the jail and gave Pischke the new number; they did not have much of a conversation.

Then in June 1993, Chaussee received a message at work that Pischke wanted to see him again. When he arrived at the jail, Pischke handed him a two-page, handwritten note. Pischke also told Chaussee how he was upset after learning that Biedenbender was cooperating with the police and that Pischke was taking all the blame. These feelings are revealed in the note itself; the relevant portions read:

> For a Plea-agreement on my behalf I'll tell the truth, the whole truth, and nothing but the truth. I can close all these cases for you. I'd like to see all these cases in one county, under one D.A. And get this done all at once. Then I can go to jail. And do my time. And get it behind me.
>
> . . . .
>
> Randy Biedenbender is the one who needs more time out of this. He's the Mastermind on all this. Randy doesn't want to face the facts, but he's just as Guilty.
>
> . . . .
>
> Randy told me to keep my mouth shut. He said they don't have nothing on us. While I kept my mouth shut. He was selling me out. Saying, he had nothing to do with it. That I was the one. My Attorney also told me not to say anything.
>
> Lets work together so I can get this behind me. Talk to the D.A. for me. All these cases in one court. One Judgement day. And I'll settle these cases.
>
> . . . .
>
> Randy told the police only what he wanted. I can tell you some more. You can get more tools back. I'll be waiting for answers.

Thank you,

/s/ Keith E. Pischke

I'm trying to put my house in order. And start all over. Talk with the D.A.s. And see what we can come up with.

The letter also identified specific sites that had been targeted by Pischke and Biedenbender.

Prior to trial, the State moved to admit this letter and the statement Pischke gave to McManaman as other acts evidence. *See* § 904.04(2), STATS. Pischke also brought pretrial motions. He sought to dismiss the complaint, alleging an illegal arrest. He also requested suppression of the physical evidence and statements he made to police.

The trial court found that the original traffic stop involving Pischke and Biedenbender was proper, as was Pischke's warrantless arrest the next day. The trial court also refused to suppress the physical evidence because it was lawfully seized pursuant to this arrest. The trial court further ruled that Pischke's statement to McManaman was admissible other acts evidence. Similarly, it ruled that the letter given to Chaussee was also admissible, thus refuting Pischke's specific objections that it was taken in violation of the right to counsel and, alternatively, was an inadmissible offer to plead.

Pischke now raises the following arguments to this court. First, he contends that the statements made to the Cudahy detective were inadmissible under the Sixth Amendment since the detective knew that Pischke had retained an attorney but nonetheless initiated contact with him. *See Michigan v. Jackson*, 475 U.S. 625 (1986). Pischke raises the same complaint in regard to the letter he delivered to Chaussee. Finally, even if there was not a Sixth Amendment violation, he

262

asserts that this letter was inadmissible because it was an offer to compromise (i.e., plead guilty). *See* § 904.10, STATS.

The State correctly notes that Pischke's Sixth Amendment claim concerning the statement made to McManaman is subject to waiver. At some stage a party must specifically inform the trial court of the legal theory supporting its claim or face having the issue waived. *See State v. Rogers*, 196 Wis. 2d 817, 828-29, 539 N.W.2d 897, 901 (Ct. App. 1995). While Pischke moved to suppress any statements made to police officers, our complete review of the record satisfies us that Pischke never raised this Sixth Amendment theory relating to McManaman, but claimed instead that McManaman should have obtained an arrest warrant before obtaining Pischke's confession. Thus, we could properly hold Pischke to waiver of this issue.

Nonetheless, we will consider the issue anyway because Pischke did raise a similar Sixth Amendment issue with regard to the statement he made to Chaussee, and the trial court did decide that issue. So, we must review it at any rate. Moreover, as will be seen, the answer to Pischke's Sixth Amendment concern regarding McManaman is essentially the same one as that relating to Chaussee. Since we must discuss the Sixth Amendment in similar contexts, we determine that it would serve the proper administration of justice to address both Sixth Amendment arguments. *See Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140, 146 (1980).

Pischke's argument is that both detectives knew Pischke had retained counsel but still initiated contact with him. He cites *Jackson* for the proposition that once the right to counsel has been invoked, the defen-

dant may not be held to have waived the right during a police-initiated custodial review.

However, the State points out that the rule against postcustodial interrogation set out in *Jackson* does not apply when the defendant initiates contact. *See Jackson*, 475 U.S. at 637; *see also McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (once the right to counsel has been invoked, defendant may not be held to have waived right during "police-initiated custodial interview.").

Regarding McManaman, the record is clear that Pischke, not McManaman, initiated the third interview during which the incriminating statements at issue were made. McManaman testified that the interview occurred because Pischke, through a relative acting on Pischke's behalf, telephoned and asked him to "come down and speak with him."

Pischke does not appear to dispute this, but claims that it is inconsequential and does not defeat his reliance on *Jackson*. He claims that the *Jackson* rule is applicable because "the entire relationship was initiated by McManaman," and even though one of the contacts was initiated by him, overall it was the detective who began and pursued the contact. Therefore, Pischke asserts that the confession began and was continued through police-initiated behavior.

■■

We agree with the State, however, that Pischke's view of the reach of *Jackson* is unwarranted. The United States Supreme Court has held that *Jackson* is simply the *Edwards* rule applied in the Sixth Amendment context. *Patterson v. Illinois*, 487 U.S. 285, 291 (1988). The *Edwards* rule holds that a person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by authorities until counsel has been

made available to him unless the accused himself initiates *further* communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981) (emphasis added); *see also Solem v. Stumes,* 465 U.S. 638, 641 (1984) ("once a suspect has invoked the right to counsel, any *subsequent* conversation must be initiated by him.") (emphasis added).

The State is correct in citing *Edwards* and *Solem* as support for its argument that the use of the word "further" or "subsequent" presupposes that there has been some earlier communication between the defendant and the police, but those prior exchanges are irrelevant. The relevant question is "who" initiated the "further" communication that produced the statements in question. Thus, we disagree with Pischke that we look to who was the grand initiator of the exchanges and look instead to the particular communication at hand. The initiator of the communication that led to the confession in this instance was Pischke. His Sixth Amendment claim as it regards his statement to McManaman fails.

Regarding the written communications given to Chaussee, the trial court correctly reasoned that the underlying facts do not support application of the *Jackson* rule. Again, this is because *Jackson* does not apply to situations where the accused initiates contact. The trial court noted that Pischke was the one who pursued the meeting with Chaussee.

██

We observe that Pischke does not make any specific references to facts within the record suggesting error in the trial court's reasoning. Indeed, our review reveals that Pischke called Chaussee and asked him to come down to the jail. When Chaussee arrived, Pischke

immediately handed him the letter and tried to enlist his support. The record supports the finding that Pischke reached out to Chaussee. The rule announced in *Jackson* simply does not apply.

Pischke next pursues a separate and distinct theory why the letter should have been excluded. He contends that it is an inadmissible offer to plead guilty under § 904.10, STATS. This rule provides in pertinent part:

> Evidence of a plea of guilty, later withdrawn . . . or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

Pischke interprets the letter as being specifically intended for the district attorney (e.g., "I can close all these cases for you") and that he only saw "Chaussee as an agent of the prosecuting attorney." Therefore, it is inadmissible under the last sentence of the rule.

The trial court, however, relied upon *Collins v. State*, 115 Wis. 596, 92 N.W. 266 (1902). There, the supreme court upheld admission of the defendant's statements which were made to a police officer in an effort to foster settlement. *Id.* at 597-98, 92 N.W. at 267. The trial court found that § 904.10, STATS., was not intended to overrule *Collins* and does not, therefore, serve as a bar to statements made to the police.

 Although the case is nearly 100 years old, the trial court noted that the Judicial Council Committee's Notes accompanying § 904.10, STATS., and its companion rule § 904.08, STATS. (offers to compromise) explain that these rules specifically were written to assure that *Collins* remain viable. *See* Judicial Council Committee's Note, 1974, WIS. STAT. ANN. §§ 904.08 and 904.10 (West 1993).[1] We agree with the trial court that the framers of § 904.10 meant to ensure that *Collins* remained the law in this state. We therefore adopt the trial court's reasoning and hold that § 904.10 does not apply to offers of compromise made to police.

 The issue thus narrows to a determination of who this letter was intended for. The trial court found that it was directed to Chaussee; thus, the exception within *Collins* applies and it is admissible. Pischke, on the other hand, asserts that he intended for it to go to the prosecutor and that he only viewed Chaussee as a delivery agent. The trial court reasoned:

> Well, clearly the district attorney wasn't a part of what went on. There's no information to indicate the district attorney knew that this conversation

---

[1] The Wisconsin rules pertaining to offers to compromise in civil and criminal proceedings were patterned after the federal rules of evidence. *See* Judicial Council Committee's Note, 1974, WIS. STAT. ANN. § 904.08 (West 1993); *compare* § 904.08, STATS., *with* FED. R. EVID. 408 and *compare* § 904.10, STATS., *with* FED. R. EVID. 410. We observe, moreover, that courts have similarly interpreted the federal rules to permit admission of statements made to FBI agents. *United States v. Baker*, 926 F.2d 179, 180 (2d Cir. 1991) (applying FED. R. EVID. 408); *United States v. Guerrero*, 847 F.2d 1363, 1367-68 (9th Cir. 1988) (applying FED. R. EVID. 410).

was taking place or knew that the defendant had written it. Certainly the district attorney had nothing to do with the writing of the document itself. When I look to the letter, it does indicate a request to the police officer that the police officer do something. It states in the last page to talk to the D.A. for me and then it goes on, etc. This is a statement to a police officer. As I view the entire letter hopefully the defendant wishes as a result of the statement to accomplish a number of things, . . . —to accomplish his objective he's making a contact to a police officer.

We agree with this logic. Taken in isolation, certain sentences reasonably could be construed as directed to the district attorney, such as "I can close all these cases for you." But the overwhelming tone of the letter is that Pischke wanted Chaussee's help. He seemed to think that Chaussee could do something to help settle the cases, e.g., "Talk to the D.A. for me" and "see what we can come up with." Therefore, § 904.10, STATS., did not serve as a bar to the admission of this letter.

*By the Court.*—Judgment and order affirmed.